**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Louis BOETTJER,
Defendant-Appellant.**

No. 77–1225.

United States Court of Appeals,
Ninth Circuit.

Feb. 21, 1978.

Certiorari Denied April 17, 1978.
See 98 S.Ct. 1627.

Marcus S. Topel (argued), San Francisco, Cal., for defendant-appellant.

Lawrence Edelman (argued), San Francisco, Cal., for plaintiff-appellee.

Before HUFSTEDLER and SNEED, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge:

The appellant, Dr. Boettjer, a registered physician licensed to practice medicine in California, was convicted after a five day jury trial on seven counts of an indictment charging him with the unauthorized distribution and attempted distribution of controlled substances in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846.[1] He was sentenced to two years imprisonment on each count, to run concurrently, in addition to a fine of $15,000 payable over five years. Execution of the sentence was suspended and he was placed on probation for a period of five years. A special parole term of two years was also imposed as to each count, to run concurrently. Error is alleged with respect to the District Court's instruction to the jury on the elements of the crime charged and its refusal to give certain instructions requested by the appellant. We affirm.

## I.

Between March 12, 1976 and May 3, 1976 three part-time investigators of the Drug Enforcement Administration made a number of visits to the appellant's office, representing themselves as patients, and sought prescriptions for methaqualone (a depressant, commonly known as quaalude) and methylphenidate (a stimulant, commonly known as ritalin). As part of their training they had been instructed not to offer any medical reasons for the prescription of these drugs. After conducting interviews, Dr. Boettjer issued a number of prescriptions for the requested drugs. The substance of these consultations was a matter as to which there was conflicting testimony at trial.

Although the sufficiency of the evidence is not challenged by the appellant, a brief review of the government's case is instructive. The three investigators provided the bulk of the evidence against Dr. Boettjer. They testified that upon their visits to the doctor's office they asked for the controlled substances by name, not complaining of any insomnia, depression, or any other condition requiring medical attention, but rather requesting the drugs because they were "out of them", "liked them", "needed a refill", "it picked me up", and so on. The doctor performed only the most casual physical examinations, in some cases weighing the patient fully dressed and taking blood pressure readings through the patient's clothing. There was evidence that Dr. Boettjer made no professional appointments, but received his callers on a first-come, first-serve basis, the priority of their visits being regulated by the order of their signatures on a sheet of paper attached to a clipboard; that very few of the visits lasted more than about five minutes; and that the doctor's established charge was $25 for a first visit and $12 for subsequent visits.

The testimony of the government's expert witness, Dr. Forrest S. Tennant, a chemist and medical doctor with distinguished professional credentials, supported the conclusion that Dr. Boettjer had dealt with the investigator-patients in an unprofessional manner without the application of sound medical criteria and that the prescriptions were not issued for legitimate medical purposes.

While the appellant testified in his own behalf and sought to cast a very different

---

* Honorable EDMUND L. PALMIERI, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. 21 U.S.C. § 841 provides, in part:

   "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, dis-

tribute, or dispense, a controlled substance;
   . . . . ."

   21 U.S.C. § 846 provides:
   "Any person who attempts or conspires to commit any offense defined by this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

light upon his activities, the guilty verdict stands—given a properly instructed jury—as a rejection of his testimony.

### II.

21 U.S.C. § 841(a)(1) makes it a crime for any person "knowingly or intentionally to . . . distribute, or dispense . . . a controlled substance," "except as authorized by this subchapter." Persons who are properly registered with the Attorney General are authorized to distribute and dispense controlled substances "in conformity with the other provisions of this subchapter." 21 U.S.C. § 822(b). It was stipulated at trial that Dr. Boettjer was a registered physician who was authorized to dispense controlled substances for legitimate medical purposes.

Quaalude and ritalin have both been classified by the Attorney General as Schedule II controlled substances. 21 C.F.R. § 1308.-12. Schedule II substances are drugs which have a "high potential for abuse," and which may lead to "severe psychological or physical dependence," but which nonetheless have a "currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions." 21 U.S.C. § 812(b)(2). It was stipulated at trial that the drugs which Dr. Boettjer prescribed were in fact these controlled substances.

█ No controlled substance in Schedule II may be dispensed without the written prescription of a practitioner[2], subject to certain exceptions not relevant here. 21 U.S.C. § 829(a). In order for a prescription for any controlled substance to be effective it "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). It is well established that prescriptions not satisfying the requirements of this regulation, if

knowingly or intentionally issued, may form the predicate for a practitioner's criminal liability under 21 U.S.C. § 841. *United States v. Rosenberg*, 515 F.2d 190 (9th Cir. 1975), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975); *United States v. Green*, 511 F.2d 1062, 1070 (7th Cir. 1975), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975); *United States v. Larsen*, 507 F.2d 385 (9th Cir. 1974). It is also established that registered physicians are not immune from prosecution under 21 U.S.C. § 841 when their activities fall outside the usual course of professional practice. *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975).

### III.

█ Appellant's central argument is that the jury instructions given by the trial court regarding the elements of the charged offenses were "erroneous, confusing, and severely prejudicial," in that they set forth an incorrect standard of criminal culpability, were at variance with the language of the indictment, and were grammatically confusing. In particular, appellant argues that the judge's failure to include the phrase "in the usual course of his professional practice" in his instruction constitutes reversible error, and that his use of the phrase "other than . . . in accordance with the medical standards generally recognized and accepted in the medical profession" incorrectly established malpractice as the standard of criminal culpability. It is urged that these actions permitted the jury to find the defendant guilty merely for practicing "bad medicine".

The language of the indictment is as follows:

" . . . ROBERT LOUIS BOETTJER, M.D., defendant herein, being a registrant authorized to dispense controlled substances for legitimate medical purposes, knowingly and intentionally did

---

2. The term "practitioner" is defined in the statute as:

" . . . a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other person licensed, registered, or otherwise permitted, by United States or the juris-

diction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research." 21 U.S.C. § 802(20).

unlawfully prescribe and cause to be distributed to an ultimate user, the following quantities of drug controlled substances . . . ; said acts of distribution in each instance were *not in the usual course of professional practice and were not for a legitimate medical purpose* ; . . . " (emphasis added.)

The relevant excerpt of the instructions given at trial reads:

"As I indicated to you just now, the defendant, as a licensed physician, may issue prescriptions for controlled substances so long as he does so lawfully. In order for you to find the defendant guilty on any count, you must first find beyond a reasonable doubt that the prescription in that count was issued by him *other than in good faith for a legitimate medical purpose and in accordance with the medical standards generally recognized and accepted in the medical profession.* (emphasis added)

Thus, the first question you must decide under each count is whether the evidence shows beyond a reasonable doubt that what the defendant did was something other than an honest effort to prescribe for a patient's condition judged on the basis of standard medical practice recognized and accepted in the medical profession. Whether the defendant acted in good faith is not merely a matter of the good faith of his intentions toward the people who came to see him but, rather, the good faith of his effort to conduct himself in accordance with the medical standards generally recognized and accepted in the United States."

We reject at the outset appellant's contention that the mere omission of the words "in the usual course of his professional practice" was sufficient to render this instruction improper. A close look at the pertinent regulation reveals that the requirements of "legitimate medical purpose" and "usual course" both must be met in order for a prescription to be validly issued. The absence of either would support a conviction under 21 U.S.C. § 841. In fact, our reading of the Supreme Court's unanimous decision in *Moore* suggests that the "usual course" standard itself imports considerations of medical legitimacy and accepted

medical standards. 423 U.S. at 138–143, 96 S.Ct. 335. Even if "usual course" has any significance independent of medical legitimacy, we are satisfied that its negation is not an essential element of the government's case. Proof beyond a reasonable doubt that the prescriptions were not issued pursuant to a legitimate medical purpose suffices to place them beyond the activities authorized by the Controlled Substances Act.

The more difficult question here is whether the given instruction clearly and sufficiently stated the applicable law to the jury. Although it is always somewhat unrealistic to parse a jury charge for latent ambiguities after the fact, we do agree with appellant that the italicized portion of the instruction above quoted may, in strict logic, be subject to several mutually inconsistent interpretations.

The first, and most plausible interpretation of the charge would permit a conviction only where the doctor is shown to have issued a prescription other than in good faith for a legitimate medical purpose *and* other than in accordance with medical standards generally recognized and accepted in the profession. This is a correct and, in fact, rather conservative statement of the law. The fact that the judge chose not to repeat the modifier "other than" before the words "in accordance with" does not, in our view, militate against this interpretation. While we are unsure how the phrase "in accordance with medical standards generally recognized and accepted in the medical profession," which presumably had its genesis in medical malpractice cases, found its way into charges under the Controlled Substances Act, we don't find its use to be improper or prejudicial. In *Moore*, the Supreme Court discussed with approval a similar charge given by the District Court which instructed the jury that it was required to find:

"beyond a reasonable doubt that a physician, who, knowingly or intentionally, did dispense or distribute by prescription, did so other than in good faith for detoxification in the usual course of a professional practice and in accordance with a standard medical practice generally recog-

nized and accepted in the United States." 423 U.S. at 138–139, 96 S.Ct. at 343.

See also United States v. Davis, 564 F.2d 840, 845–846 (9th Cir. 1977), in which another panel of this court upheld an instruction akin in certain respects to the one under scrutiny here.

A second interpretation would read the instruction as permitting a conviction where prescriptions were issued "other than for a legitimate medical purpose," but yet in accordance with medical standards. It strains belief to imagine that the jury could have been misled into finding the defendant guilty if his actions were in accordance with medical standards. Any possible confusion in this regard was cured by the Court's further instructions concerning good faith and its relationship to standards of medical practice in the latter part of the passage quoted above.

The final interpretation, and the one most relied upon by appellant, would read the instruction as permitting a conviction where the doctor's conduct in issuing the prescriptions failed either to be "in good faith for a legitimate medical purpose" or "in accordance with medical standards generally recognized and accepted in the medical profession". This is reached by applying the modifier "other than" to the conjunction of "legitimate medical purpose" and "accordance with medical standards", thereby condemning all conduct which fails to satisfy both tests. Although it is difficult to imagine a situation in which a prescription could be found issued for a legitimate medical purpose, but yet not in accordance with medical standards, this interpretation, if arrived at by a sufficient num-ber of jurors, would theoretically permit a conviction where a practitioner had merely fallen below the standards "generally recognized and accepted in the medical profession," i. e., merely upon a showing of malpractice. Such a result would clearly be contrary to the letter and spirit of the statute, and, to the extent the given instruction countenanced this result, it was deficient. For reasons to be stated shortly, however, we conclude that this deficiency was of insufficient import in the context of this case to require a reversal of the conviction.

## IV.

The hard core issue in this case was whether Dr. Boettjer was using his medical practice as a cover for the unauthorized distribution of controlled substances or whether he acted in good faith as a medical practitioner responding to the legitimate medical needs of his patients. This issue permeated the entire trial and it was explicitly and repeatedly expressed to the jury, not only by the tenor of the testimony sought to be adduced on both sides, but also by the opening and closing arguments of counsel, which are reviewed in the margin [3]. Evidence which tended to show that Dr. Boettjer's methods and consultation procedures fell short of acceptable medical standards was not offered to establish malpractice, but rather to support the absence of any legitimate medical purpose in his prescription of controlled substances. We are loathe to disturb the verdict of the jury upon the mere recitation of abstract possibilities, and, absent any persuasive showing of actual prejudice, we refuse to do so. See Fed.R.Crim.P. 52(a).

---

**3.** After stating in some detail the evidence he expected to offer, the prosecutor ended his opening statement to the jury by saying:

> "It seems to me at issue here is whether or not the defendant was acting as a doctor in treating a medical condition or whether or not he was dispensing drugs as charged in the indictment."

Defense counsel himself alluded to this central issue in the case at the very outset of his opening statement:

> ". . . this case involves the question of whether or not Dr. Boettjer, who is licensed by the State of California to prescribe medicine, prescribed medicines in this case to these agents without a proper medical indica-tion being given and outside the usual course of medical practice."

Almost immediately thereafter, he stated:

> "The question that you are going to have to decide is whether or not, based on the evidence that you are going to hear, this doctor could have had a good faith belief that there was a medical indication for the prescription of these drugs to these people and whether, in doing so, he did so in the usual course of his professional practice."

At a later point:

> "Remember, the question before you is, beyond a reasonable doubt, Dr. Boettjer could not have had a good faith belief that there was a medical indication and if you can't say that, then he is not guilty."

This court has noted that:

"Imprecision of statement and inexactness of language in instructions is not reversible error, unless the jury is misled." *Pittman v. United States*, 368 F.2d 560 (9th Cir. 1966), *cert. denied*, 386 U.S. 995, 87 S.Ct. 1314, 18 L.Ed.2d 343 (1967).

On the record as a whole, we are satisfied that a more precise instruction would not have "materially affected the deliberations of the jury." *United States v. Cutting*, 538 F.2d 835, 842 (9th Cir. 1976). *See also*

At the end of his statement to the jury, defense counsel's penultimate sentence was:

"In short, the evidence will show that Dr. Boettjer is a general practitioner who, in his mind was legitimately trying to treat patients for what he thought was a medical condition which they expressed to him and not, especially not beyond a reasonable doubt, that he was just a script doctor."

In summation, emphasis was again placed by counsel for both sides upon the same issue. This is clear from statements by the prosecutor:

"And you must decide as to each visit whether or not the defendant in this case issued these prescriptions for a legitimate medical purpose."

\* \* \* \* \* \*

"You know, if what Dr. Boettjer said about the visits that occurred was true, he wouldn't be guilty of a crime. Now he might be guilty of bad medicine. The Government is not here to prosecute the Doctor for practicing bad medicine.

If what he said was true and if the witnesses who testified in their reports indicated the facts that transpired as Dr. Boettjer had related them, there wouldn't have even been a prosecution because, again, we are not here to prosecute someone for bad medicine. But I think he did practice bad medicine.

We are here to prosecute a doctor who is unlawfully distributing controlled substances, two of which are recognized as drugs subject to abuse and have potential for harm."

\* \* \* \* \* \*

"His Honor is going to instruct you that good faith is an important consideration in this case. And as I said to you before, I would concede that if the Doctor's version of the facts were true, he could well be acting in good faith. I suggest to you that his testimony is colored by his desire to avoid conviction. His testimony is the product of wishful thinking. His testimony is based on fabricated and falsified records. And in such a case, there can be no question of good faith. I would like to leave you with this thought: the mere fact a person is a doctor and, has a

*Hamling v. United States*, 418 U.S. 87, 108, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

We have examined the other matters called to our attention by the appellant and we find no error. While we would not hold forth the charge given in this case as a model for emulation, nor would we encourage its verbatim proliferation, its use in the context of the case does not constitute prejudicial error. The appellant was convicted on sufficient evidence after a fair trial and the judgment of the District Court is accordingly affirmed.

license to prescribe medication does not mean that he will act properly. There is no assurance that he will conduct himself within the law. And when a doctor stops asking [sic] as a doctor, when a doctor stops treating people, when he, instead, gives drugs to people because they like them, then he is no longer a doctor. And while his motives might be somewhat different, he is not much different in the chain of distribution than a person who distributes drugs on the street."

Defense counsel himself stressed the same issue contending the appellant had acted with a legitimate purpose in the usual course of his professional practice. Thus he stated the issues as follows:

"The Judge will tell you there are two questions. Both have to be resolved beyond reasonable doubt as to each and everyone of these terms, and that is this:

First, could Dr. Boettjer have a good-faith belief that he was treating a legitimate medical problem?

Secondly, and even much harder to find in this case, did he issue those prescriptions with the specific intent to violate the law? That is the law, the law the Judge is going to tell you about."

\* \* \* \* \* \*

"This is a criminal case. It is not a bad medicine case. One of the few things I have agreed with the prosecution on is, it is not a malpractice case, it is not just a case of a civil suit. It is a criminal case in which a doctor is on trial."

\* \* \* \* \* \*

"The question that is coming up, ladies and gentlemen, is that where doctors are disputing these things, the experts are disputing these things, criminal liability can't be based on that. If we, as layman [sic], have two opinions of experts as to what is the usual course of medical practice and what isn't, then I would say there is a reasonable doubt as to what the usual course of practice is. And I would further say that certainly you have to give Dr. Boettjer the benefit of the doubt. It is a criminal case."