**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Jude R. HAYES, Defendant-Appellant.**

**No. 84–1276.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 12, 1985.

Decided May 9, 1986.

Brian C. Leighton, Fresno, Cal., for plaintiff-appellee.

Dale Parham, Porterville, Cal., Alan Dershowitz, Cambridge, Mass., for defendant-appellant.

Before WALLACE, ANDERSON, and PREGERSON, Circuit Judges.

WALLACE, Circuit Judge:

Hayes appeals from his conviction for prescribing Schedule II drugs to patients in violation of the Controlled Substances Act, 21 U.S.C. § 841(a)(1) (the Act). He contends that the jury was improperly instructed and that the government should not have been allowed to introduce in evidence his office records secured pursuant to search warrants. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Hayes is a physician and treats patients at his offices in Porterville, Farmersville, and Ivanhoe, California. After receiving information that Hayes was prescribing medication in violation of the Act, agents of the United States Drug Enforcement Administration obtained warrants from a federal magistrate to search Hayes's three offices. The agents executed the search warrants and seized over 200 medical files.

Hayes then instituted a civil action for the return of the records, alleging that the issued warrants were unconstitutionally overbroad. The district court in the civil action concluded that the warrants were overbroad and ordered all of the seized records and documents to be returned unless Hayes was indicted by February 1, 1983. On January 28, 1983, a federal grand jury indicted Hayes on 640 counts of prescribing Schedule II drugs to his patients in violation of the Act. The indictment focused on Hayes's treatment of 20 patients over a three-year period; each prescription of a Schedule II drug constituted a separate count.

Prior to trial, Hayes moved to suppress the evidence seized from his offices on the basis that there was no probable cause to issue the search warrants and that the warrants were general, overbroad, and violated the fourth amendment. A different district judge denied his motion and held, contrary to the decision by the judge in the civil action, that the warrants were not overbroad. Hayes never argued that the decision by the court in the civil action collaterally estopped the court in the criminal action from considering the validity of the warrant. Therefore, we will not consider that issue on appeal. *See United States v. Lasky,* 600 F.2d 765, 769 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *Mahoney v. United States,* 420 F.2d 253, 255 (D.C.Cir. 1969).

After an eight-week trial, the jury returned convictions on 281 counts. Hayes was sentenced to three years in prison with a consecutive three-year term of probation and was fined $100,000.

II

Hayes contends that the district court's initial and supplemental jury instructions were erroneous. A defendant is entitled to a jury instruction on a defense theory if the theory has a basis in law and

in the record. *See United States v. Coin,* 753 F.2d 1510, 1511 (9th Cir.1985) (per curiam). The adequacy of the jury instructions, however, is determined by examining the instructions as a whole. *See United States v. Wellington,* 754 F.2d 1457, 1463 (9th Cir.) (*Wellington* ), *cert. denied,* — U.S. ——, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). "[I]t is not error to refuse a proposed instruction so long as the other instructions in their entirety cover that theory." *United States v. Kenny,* 645 F.2d 1323, 1337 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

■ The district court has broad discretion in formulating the instructions and need not give an instruction in the precise language proposed by the defendant. *See United States v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir.1985). "Imperfectly formulated jury instructions will serve as a basis for overturning a conviction only upon a showing of abuse of discretion." *Wellington,* 754 F.2d at 1463.

### A.

■ Hayes contends that the initial jury instructions concerning the elements of the offense with which he was charged were misleading. The court instructed the jury that the government must prove that Hayes "knowingly did an act which the law forbids, purposefully intending to violate the law." The court read to the jury the relevant part of 21 U.S.C. § 841(a)(1) and then instructed them that in order to convict Hayes they

must find as to each of those counts that the Government has proven beyond a reasonable doubt each of the elements necessary to establish the offense: 1) That Dr. Jude R. Hayes, defendant, was a registrant authorized to dispense controlled substances for legitimate medical purposes; 2) That the defendant knowingly and intentionally issued a prescription; 3) That the prescription was for a Schedule II narcotic controlled substance as alleged; and 4) That the prescription was issued by him other than in good faith, for a legitimate medical purpose, in

the usual course of his professional practice.

The questions raised before us pertain to the fourth element. The court instructed the jury about the meaning of good faith:

[G]ood faith means an honest effort to prescribe for a patient's condition in accordance with the standard of medical practice generally recognized and accepted in the country. Mistakes, of course, are not a breach of good faith....

You need not agree with or believe in a standard practice of the profession, but must only be concerned with a good faith attempt to act according to them. Good faith is not merely a doctor's sincere intention towards the people who come to see him, but, rather, it involves his sincerity in attempting to conduct himself in accordance with a standard of medical practice generally recognized and accepted in the country.

Hayes contends that these instructions are misleading and contrary to our holding in *United States v. Boettjer,* 569 F.2d 1078 (9th Cir.) (*Boettjer* ), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978). In *Boettjer,* we reviewed a jury instruction which stated that to convict a physician of distributing Schedule II drugs in violation of the Act, the jury had to find beyond a reasonable doubt that the prescription was issued *"other than in good faith for a legitimate medical purpose and in accordance with the medical standards generally recognized and accepted in the medical profession." Id.* at 1081 (emphasis in original). We expressed concern in *Boettjer* that the jury could have interpreted this instruction in three conflicting ways, but concluded that there was no persuasive showing of actual prejudice and that a more precise instruction would not have altered the jury's deliberations. *Id.* at 1081–83.

Hayes raises a similar argument here. He contends that the instructions given permitted the jury to convict him if he acted in good faith but failed to conform to standard medical practices—that is, a conviction based on negligence. Hayes's argu-

ment is weighty only if we read in isolation the instruction which states that a prescription must have been issued "other than in good faith, for a legitimate medical purpose, in the usual course of his professional practice." Jury instructions, however, must be viewed as a whole in the context of the entire trial. *See Wellington,* 754 F.2d at 1463. In light of the district court's jury instructions on specific intent and good faith, we fail to see how the jury could interpret the instructions as permitting a finding of guilt based on mere negligence. Indeed, we rejected this very argument in *Boettjer* after concluding that "[i]t strains belief to imagine that the jury could have been misled into finding the defendant guilty if his actions *were* in accordance with medical standards." *Boettjer,* 569 F.2d at 1082 (emphasis in original). We emphasized that any possible confusion was eliminated by later instructions dealing with good faith and its relationship to standards of medical practice. *Id.* at 1082. Although more precise language could have been used, we reach the same conclusion in this case.

■ The court also instructed the jury about the Act's prohibition against prescribing Schedule II drugs for detoxification and maintenance of addiction:

> Narcotic withdrawal or addiction is not a sufficient medical condition justifying the prescribing or administering of a narcotic controlled substance. Therefore, if you find that the defendant ... wrote a prescription for a narcotic control[led] substance on a narcotic addict who did not have a medical complaint other than addiction or withdrawal requiring the type of narcotic controlled substances prescribed, then the issuance of said prescription would not be in good faith in the usual course of professional practice for a legitimate medical purpose.

Hayes argues that this is improper "because it imposes an objective test as to both the existence of a medical complaint and the appropriateness of treatment." The instruction, however, properly states the law. *See* 21 C.F.R. § 1306.07(c) (1985).

If a patient were a narcotic addict and the only medical complaint was addiction or withdrawal, Hayes could not have issued the drugs in good faith. The instruction refers only to "a medical complaint other than addiction or withdrawal" as a proper basis for prescribing a Schedule II drug to a drug addict. Any vagueness in the instruction favored Hayes since section 1306.07(c) permits prescribing narcotic drugs to narcotic addicts only for "intractable pain in which no relief or cure is possible or none has been found after reasonable efforts." *Id.*

Without doubt, the instructions could have been improved. When viewed as a whole, however, the initial jury instructions given by the district court relating to both the elements of a section 841(a)(1) violation and the Act's medical exception were sufficient. But Hayes further contends that even if the initial instructions correctly stated the law, they were confusing, and that the district court compounded the confusion in its supplemental instructions to the jury.

### B.

■ While deliberating, the jury submitted four substantive questions to the district court. Hayes contends that the court's responses misstated the medical exception and thus created additional confusion concerning the necessary elements for a conviction under section 841(a). We have stated that " '[t]he necessity, extent and character of additional instructions are matters within the sound discretion of the trial court.' " *United States v. Collom,* 614 F.2d 624, 631 (9th Cir.1979) (*Collom*), *cert. denied,* 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980), *quoting Wilson v. United States,* 422 F.2d 1303, 1304 (9th Cir.1970). At the same time, the district court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue. *See United States v. McCall,* 592 F.2d 1066, 1068 (9th Cir.) (per curiam), *cert. denied,* 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 665 (1979).

The jury first asked:

[Assuming Hayes is an expert on drug dependence and understands the consequences of Schedule II medication,] would Dr. Hayes be guilty of prescribing the med's charged in this case if after considering the above noted assumptions we felt that Dr. Hayes didn't prescribe them for drug maintenance or addiction and he prescribed the med's for other legitimate reasons such as moderate to severe pain that he sincerely felt existed in any individual patient[?] Would any [doctor] be guilty of the crimes charged under these circumstances[?]

The district court answered the jury: "If Dr. Hayes prescribed the drugs in good faith for legitimate medical purpose in the usual course of professional practice and did not prescribe them for drug maintenance or addiction he is not guilty." Hayes agreed to the court's supplemental instruction, except that he felt the "did not prescribe them for drug maintenance or addiction" language was confusing since the jury's question assumed that he did not do so. This contention is meritless, for the court's answer plainly incorporates the question's assumption.

The jury next asked: "If we find a patient was an addict and the doctor treated his addiction with Sched[ule] II drugs, and the patient experienced chronic pain, and the doctor treated the chronic pain in a good faith effort, how would we find— guilty or not guilty?" The court answered:

I can not answer this question directly. In the case of the treatment of a patient who is an addict, all of the factors you have mentioned must be considered in order to determine whether or not the Schedule II drugs were prescribed in good faith, for legitimate medical purpose in the usual course of professional practice.

Hayes objected on the ground that under *Boettjer* the answer should have been "not guilty." We disagree. An answer of "not guilty" might have misled the jury into believing that Hayes could treat addiction with Schedule II drugs, which he could not do. Consequently, the district judge did not abuse his discretion in not answering the jury's question directly. The court's restatement of the initial instruction was adequate. *See Collom,* 614 F.2d at 631.

The jury then asked: "Is it legal for any physician to prescribe Schedule II drugs to relieve pain for as long a time as the physician believes the pain to be present?" The judge answered: "Not always. The physician must weigh the risk of addiction against the benefits (and see the answer to other questions)." Hayes's counsel acknowledged that the weighing of the risk of addiction versus the benefits of a Schedule II drug was relevant. He argued, however, that the jury should also be specifically instructed that the duration of a prescription alone does not make the prescription illegal. We see no error in the court's refusal to give this additional instruction since the court's response to the jury's inquiry adequately referred the jury to the relevant considerations.

Lastly, the jury asked:

The opinion has been expressed that our decision hinges on whether we can determine, beyond reasonable doubt, whether in fact pain existed. The conclusion based on this opinion is that since no human can determine the degree of another person's pain, we cannot rule on the exist[e]nce or nonexist[e]nce of pain.

The court answered: "The existence of pain is not the only question involved. The jury must determine whether or not the Doctor in good faith believed that a painful condition existed that warranted the prescription of Schedule II drugs for the period of time and dosages involved." Hayes argues that this obscures the subjective element of Hayes's good faith by suggesting that pain must exist. The court's answer, however, clearly stated that pain is not the only consideration and that the jury must determine if the physician in good faith believed that pain existed. Hayes also argues that use of the term "warranted the prescription" suggested to the jury that an objective test should be applied. When read in context that term refers only

to the doctor's subjective good faith. There was no error.

### C.

Hayes raises two other arguments related to the jury instructions. He contends that the instructions impermissibly shifted the burden of proof to him. We disagree. The jury instructions clearly stated that "the Government has the burden of proving every element of the charges beyond a reasonable doubt" and that the "burden never shifts to the defendant."

Hayes also contends that section 841(a)(1) is unconstitutionally vague as applied. Hayes admits that the facial validity of section 841(a)(1) has been upheld against attacks for vagueness. *See United States v. Moore*, 423 U.S. 122, 145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333 (1975); *United States v. Rosenberg*, 515 F.2d 190, 197–98 (9th Cir.), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975). He contends, however, that the statute is vague as applied in this case because of erroneous jury instructions that "exacerbated" potentially ambiguous language in the statute. We have concluded that the initial and supplemental instructions were not erroneous. Thus, we reject Hayes's argument that the circumstances of this case caused section 841(a)(1) to be unconstitutionally vague as applied.

### III

■ Hayes contends that the warrants for the search of his three offices were facially overbroad and authorized a general search and seizure in violation of the fourth and fourteenth amendments. The district court concluded that any lack of particularity in the warrants was eliminated by the affidavits submitted in support of the warrants and, alternatively, that the general description in the warrants was permissible because a more precise description was not possible. We review de novo the district court's conclusion that the warrants were not facially overbroad. *See United States v. McClintock*, 748 F.2d 1278, 1282 (9th Cir.1984) (*McClintock*),

*cert. denied*, —— U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985).

■ The fourth amendment requires that "warrants shall particularly describe the things to be seized [and] makes general searches under them impossible." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The particularity requirement ensures that "nothing is left to the discretion of the officer executing the warrant." *Id.; see United States v. Hillyard*, 677 F.2d 1336, 1339 (9th Cir.1982) (*Hillyard*). A warrant need only be reasonably specific in its description of the objects of the search and need not be elaborately detailed. *See United States v. Brock*, 667 F.2d 1311, 1322 (9th Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). Thus, when probable cause exists, "all items in a set of files may be inspected during a search, provided that sufficiently specific guidelines for identifying the documents sought are provided in the search warrant and are followed by the officers conducting the search." *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir.1982) (*Tamura*).

### A.

■ We first examine whether the government's affidavits can be considered in determining if the warrant lacked particularity. An affidavit may be relied on to provide the requisite particularity in an otherwise overbroad warrant only "if (1) the affidavit accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein." *Hillyard*, 677 F.2d at 1340; *see United States v. Property Belonging to Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir.1981) (*Talk of the Town Bookstore*).

■ Here, it is disputed whether the warrants adequately incorporated the affidavits by reference, but it is clear that the affidavits did not accompany the warrants. The district court concluded that the government's affidavits could "be used to supply any particularity which may be

missing from the warrant," and that the requirement that an affidavit accompany the warrant is relevant only to a challenge that a search is overbroad. We disagree. The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the person subject to the search what items the officers executing the warrant can seize. *Talk of the Town Bookstore,* 644 F.2d at 1319. If the needed affidavits are not attached to the warrant, then neither purpose is served. Consequently, in this case the affidavits may not be considered in determining whether the warrant is facially overbroad.

### B.

We now examine whether the warrant on its face is overbroad and in violation of the fourth amendment. The magistrate issued three warrants, one for each of Hayes's offices, that authorized the officers to seize

(1) demerol (mependine), morphine sulfate and other controlled substance; (2) all records which document the purchasing, dispensing and prescribing of controlled substances, including, but not limited to, records contained in patient charts and all relevant records required to be maintained by Title 21 of the Code of Federal Regulations, Part 1300 to end and Sections 11190 and 11191 of the California Health and Safety Code; (3) patient logs, appointment books and other records and ledgers reflecting distribution of controlled substances [1]; (4) correspondence concerning the procuring, transferring, administering, prescribing or dispensing of controlled substances by Dr. Hayes; all of which constitute evidence of possible violations of 21 USC 841(a)(1) and 21 USC 843(a)(3).[2]

Hayes contends that the warrants are overbroad on their face because they permitted the officers to examine thousands of patient files. The number of files that could be scrutinized, however, is not determinative. The search and seizure of large quantities of material is justified if the material is within the scope of the probable cause underlying the warrant. *McClintock,* 748 F.2d at 1283; *United States v. Gomez-Soto,* 723 F.2d 649, 653 (9th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984); *United States v. Offices Known As 50 State Distributing Co.,* 708 F.2d 1371, 1375 (9th Cir.1983) (*50 State*), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984).

The magistrate found probable cause to issue the warrants based on an affidavit that described a complaint by one patient, statements by an undercover officer, testimony by one of Hayes's receptionists, and testimony of a medical consultant who reviewed Hayes's prescription records for Schedule II drugs at 15 pharmacies in Tulare County, California, and concluded that there was a high probability that Hayes "caused, abetted, or prolonged addi[c]tion or habituation to controlled substances." The magistrate found probable cause to seize all controlled substances and all records that related to the procuring, transferring, administering, prescribing, or dispensing of controlled substances. On appeal, Hayes does not challenge this determination of probable cause. The fact that the officers discovered, upon arrival at the three offices, that there were over 10,000 patient files does not detract from the magistrate's initial finding of probable cause.

---

1. In two of the warrants, this provision read: "patient logs, appointment books and other records and ledgers reflecting patient visits to Dr. Hayes or his employees, constituting evidence of illegal distribution of controlled substances."

2. The dissent states that the United States attorney admitted at oral argument that he did not draft or review the warrants or affidavits and that such a failure was a departure from normal office procedures. Dissent, p. 1357, n. 1. The United States attorney, however, also stated that he assisted in drafting the warrants and affidavits. The only departure from normal office procedures was his failure to review the *final* drafts of the affidavits and warrants before they were submitted to the magistrate.

■ Hayes also contends that the warrant failed to provide standards for the officers to distinguish between those files the officers could seize and those they could not and that the warrants should have been more narrowly drawn. We disagree. In searches of this nature "some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen v. Maryland,* 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976) (*Andresen* ). Here, the officers were limited in their seizure to documents dealing with the distribution of controlled substances.[3] The warrants did not permit them to seize any documents unrelated to controlled substances. *See United States v. Whitten,* 706 F.2d 1000, 1009 (9th Cir. 1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Where, as here, there are articulated standards that "reasonably guide the officers in avoiding the seizure of protected property, a search warrant authorizing such seizure is not a general warrant." *United States v. Pollock,* 726 F.2d 1456, 1466 (9th Cir.1984); *see Andresen,* 427 U.S. at 482 n. 11, 96 S.Ct. at 2749 n. 11; *Tamura,* 694 F.2d at 595; *United States v. Federbush,* 625 F.2d 246, 251 (9th Cir.1980); *United States v. Louderman,* 576 F.2d 1383, 1389 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978). The fact that the offi-

cers did not seize all of the materials permitted by the warrant does not mean that they possessed the type of unfettered discretion that violates the fourth amendment.

■ We also conclude that the warrants need not have been more narrowly drawn. Hayes contends that the officers possessed information concerning 58 cases of potential violations involving Schedule II drugs and that the warrants should have been limited to those 58 patient files. Such a conclusion, however, ignores the magistrate's finding, unchallenged on appeal, of probable cause to seize all documents concerning controlled substances.[4] The 58 known cases could fairly be considered as representative of more pervasive violations of the Act. *See 50 State,* 708 F.2d at 1374–75.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting.

Based on information lawfully received from various pharmacies, federal agents determined that Dr. Hayes illegally prescribed Schedule II drugs to 58 patients. Instead of limiting the search to these suspected patients and substances, the three search warrants issued in this case broadly authorized the agents to search *each* of over 10,000 patient files, located in three medical offices, for information relating to *any* controlled substance. Because the actions of the federal authorities in this case

---

**3.** The dissent contends that we have failed to consider language in two of the warrants in determining if the warrants violated the particularity requirement of the fourth amendment. Dissent, p. 1357. The Farmersville and Porterville warrants contain language that the dissent interprets as limiting the seizure of certain records to those that constitute "evidence of illegal distribution of controlled substances." The Ivanhoe warrant contains no such limiting language. All three warrants, however, contain additional language that authorized the seizure of *all records* that "document the purchasing, dispensing, and prescribing [of] controlled substances." Hayes contends, and the government concedes, that the warrants authorized the seizure of all records and documents that related to transferring, procuring, administering, prescribing, or dispensing of controlled substances. Therefore, the warrants did not require the officers to determine whether a particular item

constituted "evidence of illegal distribution of controlled substances."

**4.** The dissent states that the United States attorney admitted during oral argument that the failure to limit the warrants to records involving Schedule II drugs was a "mistake." Dissent, p. 1357, n. 1. However, the United States attorney later argued that the warrants properly were not limited to Schedule II drugs because there was probable cause to conclude that Hayes was dispensing controlled substances in violation of the law. In any event, the United States attorney's admission of a "mistake" in response to questioning by the court is irrelevant because the magistrate found that there was probable cause to issue the warrant with reference to controlled substances generally and not as to Schedule II drugs only.

demonstrate a cavalier disregard for the Fourth Amendment's particularity requirement,[1] I am unable to countenance the majority opinion's approval of the search in this case.[2]

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The touchstone of the particularity requirement is whether the warrant ensures that "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *see United States v. Gomez-Soto,* 723 F.2d 649, 653 (9th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360 80 L.Ed.2d 831 (1984). The majority, while acknowledging this fundamental principle, ignores its application in this case. A close review of the facts demonstrates the flagrant overbreadth of the warrant used by the agents to search Dr. Hayes's three medical offices.

The most obvious violation of the Fourth Amendment's particularity requirement is found in the two search warrants covering more than 9,000 patient files at the Farmersville and Portersville medical offices. These warrants authorized the search of "patient logs, appointment books and other records ... constituting evidence of illegal distribution of controlled substances." This provision is not reasonably specific because the officers executing the warrant must determine during the search whether a particular item "constitutes evidence" of illegal distribution.[3] In fact, this is exactly the type of warrant provision that this court has repeatedly struck down.[4] The majority opinion winks at this glaring deficiency by merely quoting, without explaining, these provisions in its footnote.

1. At oral argument, the United States attorney assigned to this case repeatedly acknowledged that the failure to limit the search warrants to records involving Schedule II drugs or specific patients was a "mistake" on the part of the agents who drafted the warrants. Government counsel conceded that "in hindsight" the warrants should have been limited to the suspect patient files referred to in the affidavits.

   This error was apparently due to counsel's failure adequately to assist the agents in drafting the warrants. Counsel noted that the agents typed up the warrants and affidavits and that he failed to review them before they were presented to the magistrate because "for some reason I was not available." He further acknowledged that his failure to review the warrants was a departure from "customary practice."

   Thus, although the attorney asserted that he assisted in preparing the affidavits and warrants, it appears that he did not give the agents meaningful guidance on how the documents should be worded. In fact, counsel candidly admitted that, "I was quite suprised that [the warrant] ended up reading the way it did."

2. I agree with the majority opinion that the affidavits, which were neither served with nor attached to the search warrants, may not be relied upon to provide the requisite specificity. It is noteworthy that the district court believed that the affidavits were essential to its decision to uphold the warrants while the majority finds that the warrants are sufficiently particular even without the affidavits.

3. Such a determination is especially problematic in this case because of the "medical exception" to the prohibition on prescription of controlled substances. A file indicating that Dr. Hayes prescribed a controlled substance would not necessarily establish a violation of the statute. The executing officers would have to determine if the prescription was "excessive" or for a "non-medical" purpose. In fact, the agents testified that they used their own judgment in determining what to seize from Dr. Hayes's offices.

4. *See, e.g., Gomez-Soto,* 723 F.2d at 653–54 (invalidating warrant provision authorizing search of papers "evidencing failures to file currency transaction reports...."); *United States v. Cardwell,* 680 F.2d 75, 76 (9th Cir.1982) (search of corporate records "which are the fruits and instrumentalities, of violations of [federal tax law]."); *VonderAhe v. Howland,* 508 F.2d 364, 366–67 (9th Cir.1974) (search of documents "used as a means of committing and constitute evidence" of federal tax offenses); *see also United States v. Drebin,* 557 F.2d 1316, 1322–23 (9th Cir.1977) (search of "illegally reproduced" film), *cert. denied,* 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978); *cf. Andresen,* 427 U.S. at 480–81, 96 S.Ct. at 2748–49 (provision authorizing search of "other fruits, instrumentalities and evidence of a crime at this [time] unknown" upheld only because it accompanied a lengthy list of specified and particular items to be seized pertaining to specific property).

Nor do the warrant provisions addressed in the text of the majority opinion pass constitutional muster. The warrants at issue in this case authorize the search of every patient file in all three of Dr. Hayes's offices. The broad language of the warrants encompasses about 8,000 files in the Porterville office, 1,500 files in the Farmersville office, and 1,000 files in the Ivanhoe office. The majority opinion concludes that these vast numbers are really insignificant, noting that the Court in *Andresen* acknowledged that in searches of voluminous records, "some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." 427 U.S. at 482 n. 11, 96 S.Ct. at 2749 n. 11. The Court in *Andresen* went on to state, however, that in such searches "responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy." *Id.* In this case, an opportunity to minimize unwarranted intrusions readily presented itself to the agents and to the issuing Magistrate—the search could have been, but was not, restricted to the files pertaining to the particular patients or drugs referred to in the affidavits. I believe that "responsible" officials would have, at a minimum, limited the search warrant to Schedule II drugs, rather than to any controlled substance, and the 58 suspect profiles, rather than to the 10,000 patient files.

Moreover, the failure to describe with particularity the items to be seized cannot be squared with this court's repeated pronouncements that a general description in a warrant is permissible only if "a more precise description is not possible." *Gomez-Soto,* 723 F.2d at 654; *United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982); *see also VonderAhe,* 508 F.2d at 370; *accord United States v. Bright,* 630 F.2d 804, 812 (5th Cir.1980). Although the government acknowledges that its investigation of Dr. Hayes focused on excessive prescription of Schedule II drugs, the warrant authorized a search of documents and patient files pertaining to every controlled substance, from Percodan to such commonly prescribed medications as Tylenol with codeine and Valium. Here, as in *Cardwell,* the results of the governments pre-search investigation "were not used to refine the scope of the warrant." *See Cardwell,* 680 F.2d at 78.[5]

The failure to limit the warrants so as to minimize intrusions upon patient's privacy interests is particularly troublesome because the documents to be searched were primarily medical records. Information contained in patient files is extremely personal and potentially embarrassing to innocent third parties. Unlike the cases cited by the majority, in which the searches generally involved a narrow class of business transactions,[6] the search in this case en-

---

**5.** The government admitted that it sought a warrant only because Dr. Hayes resisted its attempt to subpoena certain medical records. The government's failure to continue its investigation by way of subpoenas, however, does not necessitate the use of an overbroad warrant. "While we may not question the wisdom of using a warrant, as opposed to less intrusive methods available to [the government], we may demand that 'if such drastic procedure is to be availed of, it should be strictly limited as constitutionally required.'" *Cardwell,* 680 F.2d at 78 (quoting *VonderAhe,* 508 F.2d at 369) (citations omitted).

**6.** *See Andresen,* 427 U.S. at 466 (search of documents relating to sale of specified property); *United States v. McClintock,* 748 F.2d 1278, 1282 (9th Cir.1984) (items and records from gemstone retailer), *cert. denied,* — U.S. — 106

S.Ct. 75, 88 L.Ed.2d 61 (1985); *Gomez-Soto,* 723 F.2d at 653 (business transactions by defendant and three corporations, records of international travel, documents indicating residence or citizenship, and handwriting samples); *United States v. Offices Known As 50 State Distributing Co.,* 708 F.2d 1371, 1372 (9th Cir.1983) ("invoices, sales orders", etc., from national supplier of advertising products), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984); *United States v. Whitten,* 706 F.2d 1000, 1008–09 (9th Cir.1983) (records indicating ownership or occupancy of residence), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *United States v. Tamura,* 694 F.2d 591, 594 (9th Cir.1982) (business records from television cable importer); *United States v. Federbush,* 625 F.2d 246, 251 (9th Cir.1980) (documents and checks pertaining to a certain bank); *United States v. Louderman,* 576 F.2d 1383, 1386 (doc-

compassed personal medical history contained in thousands of patient files. The Magistrate's failure to narrow the scope of the search resulted in massive intrusions on personal privacy interests. *Cf. United States v. Abrams,* 615 F.2d 541 (1st Cir. 1980) (invalidating broad search of medical records); *VonderAhe,* 508 F.2d 364 (same).

Finally, the testimony of the executing officers establishes that the warrants failed to provide "reasonable guidelines" for the search of the thousands of medical files in this case. While the government's investigation focused on excessive prescription of Schedule II drugs, the breadth of the warrant and the number of medical files in the offices gave the searching officers no alternative but to exercise broad discretion in choosing which files to seize. According to an agent searching the 8,000 files in the Porterville office, anything within the confines of the offices was "fair game," and whether to search a particular file was "up to the discretion of the officer." In fact, the agent stated: "[p]ersonally, I was specifically looking for the substances Dialudid and Percodan." He further admitted that "it was basically assumed that each officer was to use his common sense and judgment as to which file should be seized."[7] In fact, the agents soon called off their attempts to search all the medical records, and focused instead on certain patient files, and on a triplicate prescription log maintained by Dr. Hayes for Schedule II prescriptions. Thus, the overbreadth of the warrants in this case not only permitted discretionary rummaging and seizure, but in fact *necessitated* it.

The number of files searched, the general object of the search, and the nature of the information contained in those files all demonstrate that the "guidelines" contained in the warrants were simply not reasonable. There is no valid excuse for

the omission because the opportunity to provide reasonable guidelines was readily available to the government and the issuing Magistrate. Because reasonably specific guidelines were not provided, the warrants, in my view, do not even come close to satisfying the Fourth Amendment's particularity requirement. For the reasons stated above, I dissent.

---

uments relating to the activities of a business involved in locating debtors); *see also United States v. Pollock,* 726 F.2d 1456, 1458 (9th Cir. 1984) (items used in methamphetamine manufacture).

**7.** The lack of reasonable guidelines was also noted by other agents. The agents in charge of the Ivanhoe and Farmersville searches testified that although they were looking for documents indicating excessive prescription of Schedule II drugs, there were no specific guidelines by which they were to determine what to seize.