In re **GRAND JURY INVESTIGATION CONCERNING SOLID STATE DEVICES, INC. and Unisem International.**

**SOLID STATE DEVICES, INC.; Unisem International, Petitioners–Appellants,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 96–56000.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1997.

Decided Nov. 26, 1997.

Larry S. Greenfield and Richard Marmaro, McCambridge, Deixler, & Marmaro, Los Angeles, California, for plaintiffs-appellants.

Jeffrey C. Eglash and Steven M. Arkow, Assistant United States Attorneys, Los Angeles, California, for defendant-appellee.

Before: PREGERSON, D.W. NELSON, and HAWKINS, Circuit Judges.

D.W. NELSON, Circuit Judge:

Solid State Devices, Inc. and Unisem International (collectively "SSDI") appeal the district court's decision to deny their petition for return of property, filed pursuant to Federal Rule of Criminal Procedure 41(e). SSDI's property was seized in connection with a Department of Defense ("DoD") investigation of alleged fraudulent practices. SSDI challenges the legality of the seizure, arguing that the warrants executed against it were insufficiently specific. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's denial of SSDI's Rule 41(e) motion.

## FACTUAL AND PROCEDURAL BACKGROUND

SSDI supplies semiconductor devices to the DoD and to a number of DoD contractors. Because SSDI's semiconductors are used in sophisticated military, aerospace, and space programs, the Government requires that they be manufactured in conformity with exacting standards and tested to assure a high degree of reliability.

Since 1995, SSDI has been under investigation by agents of the Defense Criminal

Investigative Service ("DCIS"), an investigative agency within the DoD. On May 17, 1995, Craig N. Wyckoff, a DCIS Special Agent, presented an affidavit to United States Magistrate Judge Virginia Phillips in support of the issuance of warrants to search SSDI. Based on interviews with two SSDI employees, SSDI clients, and government experts, Wyckoff alleged that SSDI had acquired commercial-grade semiconductors that did not comply with the standards and specifications required under SSDI's government contracts. He alleged that SSDI then falsely labeled these parts as SSDI-manufactured components, falsified test results certifying that the parts had undergone the necessary quality inspections, and sold the parts to the government at "high reliability" component prices. Because Wyckoff's affidavit reveals sensitive information, including the identities of informants, Wyckoff filed it under seal and requested that its contents not be disclosed to SSDI.

On May 23, 1995, federal agents of the FBI, DCIS and NASA executed search warrants on the premises of SSDI. The warrants, the validity of which is at issue on this appeal, authorized the seizure of a broad array of documents and data storage equipment, including the following:

a. Contracts, subcontracts, purchase orders, sales orders, invoices and correspondence, Certificates of Quality Conformance/Compliance (COQC), and memoranda relating to agreements between Solid State Devices, Inc., (SSDI), and any governmental or non-governmental entity regarding the manufacture, testing or inspection of semi-conductor devices supplied for U.S. Department of Defense (DoD) or other governmental programs from May 1, 1990 to the present.

. . . .

k. Electronic data processing and storage devices, computers and computer systems including central processing units; internal and peripheral storage devices such as fixed disks, floppy disk drives and disk-

ettes, tape drives and tapes, optical storage devices or other memory storage devices; peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, and related communications devices such as modems; together with system documentation, operating logs and documentation, software and instruction manuals, all passwords, test keys, encryption codes or similar codes that are necessary to access computer programs, data or other information or to otherwise render programs or data into a usable form.

The warrants made no reference either to any statutes allegedly violated or, with one minor exception,[1] to any illegal acts. Moreover, no one at SSDI has been permitted to see the affidavit on which the warrants were based.

Pursuant to the search warrants, the agents seized computers, computer storage media, and more than 2,000 file drawers and file boxes containing business records. SSDI claims that nearly ninety percent of all of the documents and items at SSDI dealing with contracts over a five-year period were seized. These items have been stored since their seizure in May 1995 at DCIS offices in El Toro, California. In March 1996, SSDI filed a petition for return of seized property pursuant to Federal Rule of Criminal Procedure 41(e). The district court denied the petition, and SSDI timely appeals.

### STANDARD OF REVIEW

■ We review de novo a denial of a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e). *See United States v. Kow,* 58 F.3d 423, 426 (9th Cir.1995); *Center Art Galleries–Hawaii, Inc. v. United States,* 875 F.2d 747, 749 (9th Cir.1989) (*"Center Art "*).

### ANALYSIS

■ Federal Rule of Criminal Procedure 41(e) provides, in part, "A person aggrieved by an unlawful search and seizure or by the

---

**1.** The warrants authorized the seizure of fourteen categories of materials. Only one of the categories specifically referred to illegal acts:

j. Hewlett Packard computer utilized in the falsification of test results of the pre and post burn-in testing on Westinghouse semi-conductor parts.

deprivation of property may move the district court ... for the return of the property on the ground that such person is entitled to lawful possession of the property." Fed. R.Crim.P. 41(e). A Rule 41(e) motion therefore should be granted either when the movant is aggrieved by an unlawful seizure or, if the seizure was lawful, when the movant is aggrieved by the government's continued possession of the seized property. *See* Advisory Committee Notes to the 1989 Amendment of Rule 41(e). On this appeal, SSDI confines itself to challenging the legality of the Government's seizure of its property.

■ The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Accordingly, a warrant must " 'clearly state what is sought,' " and its scope must " 'be limited by the probable cause on which the warrant is based.' " *United States v. Towne,* 997 F.2d 537, 544 (9th Cir.1993) (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 856–57 (9th Cir.1991)). In assessing whether a warrant passes constitutional muster, a court therefore is obliged to make two inquiries: first, whether the scope of the search authorized by the warrant was justified by probable cause and, second, whether the warrant was sufficiently particular to limit the discretion of the officers executing it. Because we find that the scope of the search exceeded the Government's showing of probable cause, however, we do not reach the particularity analysis.

*Probable Cause Requirement*

■ In evaluating whether a warrant's breadth is sufficiently supported by probable cause, we "must ensure that the magistrate had a 'substantial basis' for finding probable cause." *United States v. Weber,* 923 F.2d 1338, 1343 (9th Cir.1990) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

■ The warrants executed against SSDI were exceptionally broad in scope. Indeed, the only limitations imposed by the warrants were that the records relate to the supply of semiconductors to government programs and that they date from 1990 to 1995. The Government acknowledges, however, that the vast majority of SSDI's business relates directly or indirectly to the supply of semiconductors for government programs. Moreover, the Government nowhere provides a rationale for the dates chosen. Under these circumstances, such limitations are not meaningful.

■ The Government does not dispute that the warrants served on SSDI were broad in scope. It simply contends that Wyckoff's affidavit indicates that SSDI was so pervaded by fraud that there was probable cause to seize the majority of its documents. Under the law of this circuit, it is well-settled that "[a] generalized seizure of business documents may be justified if the government establishes probable cause to believe that the entire business is merely a scheme to defraud or that all of the business's records are likely to evidence criminal activity." *Kow,* 58 F.3d at 427. *See generally United States v. Offices Known as 50 State Distrib. Co.,* 708 F.2d 1371, 1374–76 (9th Cir.1983) (*"50 State "*) (finding breadth of warrant justified by breadth of probable cause in view of fact that affidavit evidenced "pervasively fraudulent operation").

SSDI, however, is substantially different from the types of businesses to which this Court has applied the "pervaded by fraud" exception in the past. This circuit first adopted the exception in *50 State,* relying on the First Circuit's decision in *United States v. Brien,* 617 F.2d 299 (1st Cir.1980). In both *50 State* and *Brien* the affidavits supporting the warrants at issue showed that the companies involved were little more than "boilershop" sales operations engaged only negligibly in legitimate business activities. *See 50 State,* 708 F.2d at 1374–75; *Brien* 617 F.2d at 308–09. Although Wyckoff's affidavit alleges that SSDI has routinely engaged in fraudulent practices, it does not provide cause to believe that the majority of SSDI's operations are fraudulent. To the contrary, the record indicates that SSDI has received an impressive array of awards and certificates from a variety of clients, commending

its contributions to their projects. Where a business appears, as SSDI does here, to be engaged in some legitimate activity, this Court has required a more substantial showing of pervasive fraud than that provided by the Government in the instant case. *See, e.g., United States v. Hayes*, 794 F.2d 1348, 1356 (9th Cir.1986) (search of all of physician's patient records justified by complaints of illegal prescriptions to very large number of patients).

Thus, while Wyckoff's affidavit very likely would have provided probable cause for a narrower, more carefully-defined search, we find it to have been an insufficient basis for the broad scope of the warrants executed against SSDI.[2]

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's order denying the plaintiffs' Rule 41(e) motion for return of property and REMAND with instructions to the district court to grant the plaintiffs' Rule 41(e) motion.

---

**2.** Pursuant to our recent decision in *J.B. Manning Corp. v. United States*, 86 F.3d 926, 927–28 (9th Cir.1996) (holding that preindictment motions under Rule 41(e), as amended in 1989, do not result in the suppression of evidence from trial), we need not discuss the admissibility of the evidence obtained from the Government's search of SSDI.