**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy S. SOMERS, Defendant–
Appellant.**

**Nos. 90–1318, 90–1669.**

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1991.

Decided Dec. 12, 1991.

Andrew B. Baker, Jr. (argued), Office of the U.S. Atty., Dyer, Ind., Rick L. Jancha, and William T. Grimmer, Asst. U.S. Attys., Office of the U.S. Atty., South Bend, Ind., for plaintiff-appellee.

Chris Averkiou (argued), Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, WOOD, Jr., and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Timothy S. Somers was charged in a superseding indictment with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and ten counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Somers was also charged along with five others in a separate twenty-one count indictment which attributed to him an additional violation of § 846 and three violations of § 841(a)(1). At the trial on the first indictment, Somers was convicted on nine counts—including one count of conspiracy under § 846—for which he was sentenced to 180 months imprisonment and five years of supervised release. Thereafter, the government told Somers that it would dismiss the second indictment if Somers pleaded guilty to one count of violating § 841(a)(1). He agreed and was subsequently sentenced to 109 months imprisonment, to be served concurrently with his earlier conviction, and followed by a three

year term of supervised release. Somers now challenges both convictions. We affirm.

## I.

The first indictment against Somers focused on his narcotics trafficking during the fall of 1988. Through various undercover informants, a special police operation unit in South Bend, Indiana, learned that Somers was selling cocaine from his residence. The police were also told that Somers typically completed cocaine transactions through street dealers, including his next-door neighbor Patricia Norman. On the basis of this information, an undercover officer met with Norman on October 6, 1988, to negotiate a purchase of an "eight-ball" (one-eighth ounce) of cocaine. He gave Norman $300.00. Surveillance units then watched her enter the rear-door of Somers' home and later re-emerge with an "eightball" of cocaine which she handed to the officer.

The undercover officer arranged another cocaine purchase with Norman on the night of October 8, 1988. Norman again went into Somers home, but when she returned she explained that her source had to replenish his cocaine supply to fill the order. Surveillance units then observed Somers leave his home, drive to another location, and then drive back to his home. Intelligence information later revealed that the location Somers had driven to was the residence of Edward Landaw, believed to be a major cocaine trafficker in the South Bend area. After Somers returned, Norman went back inside Somers' home and brought out a quarter ounce of cocaine for the undercover officer.

Shortly thereafter, police learned that Somers would occasionally sell cocaine from an Eagle Paint store in South Bend. On October 10, 1988, another undercover officer sought out James Weesner for a cocaine purchase. When the officer asked to buy cocaine, Weesner phoned "Tim" in his presence and indicated that "Tim" was at a paint shop. While the officer waited in his car, surveillance units followed Weesner to the Eagle Paint store. At that time,

Eagle Paint had been rented by Landaw and Somers was frequently seen there. Weesner entered the store and, after a short time, left and returned with the cocaine. Somers' pickup truck was parked at the store during the time Weesner was inside.

By mid-October, one of the undercover officers had been invited to enter Somers' home. There on October 14 and 18, 1988, he purchased cocaine from Rick and Janie Radtke, who worked with Somers in distributing cocaine. However, the officer never had any direct contact or communication with Somers himself during either of these visits. Norman and the Radtkes would communicate with Somers through an intercom system. Somers always remained downstairs.

On October 20, 1988, the officer returned to Somers' home to purchase two ounces of cocaine. After discussing the price with Norman, the Radtkes indicated that $3,200.00 would be agreeable to "Tim," but informed the officer that he would have to pick the cocaine up in an hour since their source did not have two ounces of cocaine on hand. Later that day, surveillance units observed Somers leave his home on a motorcycle and followed him to Landaw's residence. When Somers' left Landaw's residence, he was again followed. Surveillance units however, soon lost sight of Somers and by radio they requested that a marked car stop him. The radio request included a description of Somers' motorcycle and warned that Somers might be in possession of narcotics and was to be considered armed and dangerous.

A patrol officer who was assigned to make the arrest saw Somers drive by his location at a high rate of speed and run a red light. The officer made the stop and advised Somers that he wanted to pat him down for weapons. Somers consented. After performing a routine pat-down search, the officer felt lumps in each of Somers' breast pockets and thereupon removed two ounces of crack cocaine. He also uncovered $1,840.00 in cash and a hypodermic needle.

Prior to trial, Somers filed a motion to suppress the evidence seized from his person and other items obtained during a search of his house. After receiving briefs from both parties, the court denied his motion in a written order issued on August 31, 1989. Somers was subsequently convicted by jury on November 3, 1989.

The second indictment against Somers concerned his narcotics trafficking with a separate supplier known as Jesus Rivera of Chicago, Illinois. Somers regularly purchased cocaine from Rivera between April, 1988 and June, 1989. Typically, Rivera or one of his "mules" would take the cocaine to South Bend and deliver it to Somers, who would in turn distribute to Lisa Jerzak, Michael Zedley, and others in the South Bend area. On one occasion in June, 1988, Somers received a delivery from Rivera of four ounces of cocaine.

Shortly after being convicted on nine counts charged in the first indictment, Somers reached a plea agreement with the government. The agreement provided that the government would dismiss the balance of the charges in the second indictment if Somers pleaded guilty to one § 841(a)(1) violation; the government also indicated that it would make a non-binding recommendation for a sentence in the middle of the applicable guideline range and also recommend that the sentence be imposed to run concurrently with his sentence under the first indictment. Somers agreed and accordingly pled guilty to one count of violating § 841(a)(1).

Nearly two months after entering the plea of guilty, Somers moved to withdraw his plea on the grounds that it was not knowing and intentional. The court denied his motion and proceeded with sentencing.

## II.

■ Somers' first argument on appeal is that the prosecution of the § 841(a)(1) count to which he pled guilty is barred by the *Double Jeopardy Clause* of the fifth amendment. Relying on the Supreme Court's recent decisions in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and *Blockburger v.*

*United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), he contends that the § 841(a)(1) charge was a lessor-included offense of the conspiracy offense for which he was previously prosecuted in the first indictment—thereby violating the double jeopardy prohibition against "prov[ing] conduct that constitutes an offense for which the defendant has already been prosecuted." In support of this argument, he points out the conduct alleged in the § 841(a)(1) count of the second indictment took place during the time period of the first conspiracy. We find this contention unpersuasive.

Although the Double Jeopardy Clause protects an individual from a second prosecution for the same offense after conviction, *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1880), the § 841(a)(1) count to which Somers pled guilty cannot be fairly regarded as part of the first conspiracy. While we recognize that the two conspiracies charged against Somers overlapped for a five-month period, each involved different criminal actors and chains of distribution, with Somers being the sole common participant. The conspiracy charge for which Somers was convicted in the first indictment alleged that Edward Landaw and Linette Moss supplied cocaine to Somers, who in turn distributed it to customers and street dealers such as Norman, Weesner and the Radtkes. No reference was made to any of the events or persons relevant to the allegations of the second charge to which he pled guilty. By contrast, the second indictment charged Somers with forming a separate and distinct conspiracy with Jesus Rivera to distribute cocaine to Lisa Jerzak, Michael Zedley and several other unknown persons.

■ Even if the conspiracy offense charged in the second indictment were a part of the conspiracy for which Somers was earlier convicted, double jeopardy does not bar the prosecution of the underlying substantive offense to which he pled guilty. The law is well-settled that the commission of a substantive offense and the conspiracy to commit that offense are two separate crimes. *Iannelli v. United States*, 420

U.S. 770, 777–78, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975); *United States v. Soteras,* 770 F.2d 641, 646 (7th Cir.1985). Hence, Somers' guilty plea to the § 841(a)(1) count would be subject to a double jeopardy challenge as a lesser included offense within the meaning of *Blockburger* if, and only if, the overt acts alleging this offense were previously charged in the first indictment. *See, e.g., United States v. Gambino,* 920 F.2d 1108 (2nd Cir.1990) (acquittal on charge of conspiracy to import heroin barred subsequent charges of conspiracy to import cocaine and heroin where two of the overt acts alleged were overt acts previously alleged in the earlier conspiracy). Such was not the case. As already discussed, neither indictment referred to any of the overt acts or other defendants alleged in the other, nor were any such references made either during the trial on the first indictment or the plea hearing on the § 841(a)(1) count of the second indictment.

We think that the different nature and delineated scope of each conspiracy are dispositive on this issue, and consequently we conclude that double jeopardy did not bar Somers' conviction on the § 841(a)(1) count alleged in the second indictment.

■ Somers next challenges the facial sufficiency of the both indictments because they fail to identify the principal he allegedly aided and abetted in distributing cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). This argument, however, ignores much of the case law construing the essential elements of an 18 U.S.C. § 2 violation. In order to convict a defendant as an aider or abettor under § 2, it has never been necessary to convict or even identify the principal, provided there is sufficient evidence to establish the commission of the substantive offense. *See United States v. Staten,* 581 F.2d 878 (D.C.Cir.1978); *United States v. Harris,* 523 F.2d 172 (6th Cir.1975); *United States v. Untiedt,* 493 F.2d 1056 (8th Cir.1974); *United States v. Harper,* 579 F.2d 1235, 1239 (10th Cir.1978). Both indictments in this case tracked the language of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), as required

by due process. Allegations as to the identity of the principal whom Somers assisted were simply not required, and, if included, would have been considered mere surplusage which need not be proved at trial. *Harper,* 579 F.2d at 1239.

■ Even assuming that such a defect was fatal to both indictments, Somers has waived this argument. Under Federal Rule of Criminal Procedure 12(b)(2), defenses and objections based on defects in the indictment must be raised prior to trial. Otherwise, any such defenses and objections—with the exception of those that are jurisdictional—are waived under Rule 12(f). *United States v. Petitjean,* 883 F.2d 1341, 1344 (7th Cir.1989). There is little question that Somers' objection is not jurisdictional in nature, and therefore it should have been raised at the district court. Permitting a defendant to pursue such an allegation now would only encourage the defensive "sand-bagging" which Rule 12 was designed to prevent.

We conclude that both indictments averred sufficient material facts to charge Somers with aiding and abetting as a violation of § 18 U.S.C. § 2.

■ Somers' third argument is that the district court erred in denying his motion to suppress the cocaine and cash which the police seized during the "pat down" search of Somers at the October 20, 1988 traffic stop. Relying on the Supreme Court's decision in *Terry v. Ohio,* he contends that the district court erroneously determined that the police were not "aware of any specific and articulable facts which, under the totality of the circumstances, would lead to a reasonable suspicion of criminal conduct" on the part of Somers and therefore were not justified in stopping his motorcycle. 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). He also claims that the subsequent seizure of the cash and cocaine found in Somers' pockets exceeded the limits of a permissible frisk under *Terry,* since the police could not reasonably believe that the bags of cocaine felt like weapons.

This court reviews a denial of motion to suppress evidence under a clearly erroneous standard. *United States v. Barnes,*

909 F.2d 1059, 1067 (7th Cir.1990); *United States v. D'Antoni*, 856 F.2d 975, 978–79 (7th Cir.1988). We will accept the district court's findings of fact and determinations of credibility unless we are left with the definite and firm conviction that a mistake has been committed. *Barnes*, 909 F.2d at 1067. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*, quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

In denying Somers' motion to suppress, the district court specifically addressed his challenges to the validity of the investigatory stop. It held that "[t]he facts here fully justify these police officers on the basis of 'reasonable suspicion' of stopping and detaining defendant Somers ..." within the meaning of *Terry*. The court, however, also stated that Somers' stop was supported by probable clause—a much higher standard for effecting an arrest than the "reasonable suspicion of criminal conduct" test announced in *Terry*. In reaching this alternate conclusion, the district court cited the police's "prior observations and knowledge of the defendant's involvement in a conspiracy to possess and distribute cocaine" and explicitly rejected Somers' contention that his arrest was pretextual.

A review of the record clearly demonstrates that the police had more than probable cause to arrest and search Somers for narcotics trafficking, let alone a "reasonable suspicion" of criminal conduct on Somers' part. The police had conducted extensive surveillance of Somers' narcotics activities. On four separate occasions prior to his October 20, 1988 arrest, undercover officers had purchased cocaine at Somers' home. Surveillance units learned that Somers sold cocaine from his home on a regular basis and that he would often visit Edward Landaw to replenish his cocaine supply. And, in the few hours before his arrest on October 20, 1988, Somers was observed heading to Landaw's residence, returning from Landaw's residence at an excessive rate of speed, and then running a red light after he realized he was being followed. In light of this evidence, we conclude that the district court was not clearly erroneous in determining that the investigatory stop of Somers was justified.[1]

We likewise reject Somers' contention that the pat-down search of his person exceeded the limits of a permissible frisk under *Terry*. At trial, Officer Ian McQueen testified that he observed two bulges in the front pockets of Somers' leather jacket, and therefore advised Somers that he wanted to conduct a limited pat-down for weapons. According to McQueen, Somers orally consented to this search. Officer McQueen then felt each of the bulges in Somers' pockets, and determined that each was the approximate size and texture of a small automatic weapon. Only after emptying Somers' pockets was it apparent that the lumps were packets of cocaine. The district court specifically stated that it found McQueen's testimony about Somers' stop and frisk "to be fully and completely credible." We will not substitute our judgment of Officer McQueen's credibility for that of the district court, and therefore conclude that the district court's findings on this issue were not clearly erroneous.

Somers' final contention is that the search warrant authorizing the search of

---

1. In a recent decision on this issue, we indicated that the concept of "pretextual arrest" may no longer be a viable theory in this circuit. *United States v. Trigg*, 925 F.2d 1064 (7th Cir.1991). To determine the reasonableness of an arrest, we only consider two objective factors: (1) did the arresting officer have probable cause to believe the defendant had committed or was committing an offense; and (2) was the arresting officer authorized by state and/or municipal law to effect a custodial arrest for the particular offense. *Id.* at 1065.

Evaluating Somers' arrest in this light, there is little question that his stopping was supported by probable cause. The arresting officer, Ian McQueen, had been previously informed about Somers' suspected narcotics activity and had reason to believe he may be armed. McQueen had also personally observed Somers speeding and running a red light. Under these facts, McQueen's conduct must be considered reasonable.

his home was invalid because it failed to describe with adequate particularity the items to be seized. Specifically, Somers claims that the warrant is fatally overbroad in that it authorized the police to search for and seize "dangerous drugs and narcotics, evidence of cocaine, materials used for the packaging and distribution of cocaine, and marijuana, such as scales, plastic bags, cutting agents, ledgers of narcotics transactions and ... United States Currency." We disagree.

■■■ Although the fourth amendment requires that a search warrant describe the objects of the search with reasonable specificity, it need not be elaborately detailed. *United States v. Reed*, 726 F.2d 339, 342 (7th Cir.1984). Here, there is little question that the warrant's description of narcotics material was sufficiently detailed to enable the police to distinguish contraband from legitimate items. Nor was it inappropriate that the warrant authorized the seizure of United States currency; this court has previously upheld a search warrant authorizing, among other things, the seizure of gems, narcotics and currency. *United States v. Peters*, 791 F.2d 1270, 1278–79 (7th Cir.1986); *see also United States v. Savoca*, 761 F.2d 292, 299 (6th Cir.1985). We conclude that the search warrant described the items to be seized with sufficient particularity to satisfy the requirements of the fourth amendment.

### III.

For all the foregoing reasons, we AFFIRM the district court's entry of judgment of conviction in both cases.