**UNITED STATES of America,**
**Plaintiff,**

v.

**Randolph W. LIEVERTZ, Defendant.**

**No. IP–02–005–CR–01–B/F.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 15, 2002.

Josh Minkler, Indianapolis, IN, for Plaintiff.

Linda M. Wagoner, Attorney at Law, Indianapolis, IN, for Defendant.

**ENTRY DENYING DEFENDANT'S MOTION TO SUPPRESS**

BARKER, District Judge.

Defendant Randolph W. Lievertz is a licensed medical physician authorized to dispense Schedule II narcotic substances in the course of his professional practice and a participating provider in the Indiana Medicaid Program. Lievertz is charged with possessing a Schedule II controlled substance with the intent to distribute as well as knowingly and willfully executing and attempting to execute a scheme and artifice to defraud a health care benefit program and obtain money from that program by false and fraudulent pretenses, representations, and promises. This matter comes before the Court on Defendant's Motion to Suppress. An evidentiary hearing was held, limited to the single factual issue raised by the Motion, namely, Defendant's allegation that the government obtained information critical to the determination of probable cause through an illegal, warrantless search. Defendant also argued that the warrant used to conduct a subsequent search was too general and overbroad. For the reasons set forth in detail below, we *DENY* Defendant's Motion to Suppress.

*Background*

On January 15, 2002, Defendant Randolph W. Lievertz ("Lievertz") was indicted by a grand jury on multiple counts of possessing a Schedule II controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and participating in a scheme to defraud a health care benefits program, in violation of 18 U.S.C. § 1347. First, 21 U.S.C. § 841(a)(1) provides, in relevant part:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

> (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

In addition, 18 U.S.C. § 1347 provides, in relevant part:

> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice ... to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall

be guilty of a crime against the United States. Lievertz filed a Motion to Dismiss the Indictment on numerous grounds, including alleged deficiencies in the content of the Indictment and the unconstitutionality of 21 U.S.C. § 841. The Court denied the Motion to Dismiss on November 1, 2002.

On November 14, 2002, at the conclusion of the hearing on Lievertz's Motion to Suppress, the court found the following additional facts: (1) the waiting room shared by Leivertz and Dr. Irick was a common area available and accessible to the public in which Leivertz has no legitimate expectation of privacy; (2) both Dr. Irick, who was Leivertz's co-tenant and landlord and who possessed actual authority over the premises, and Connie Woodyard, who was the doctors' office manager and who possessed apparent authority over the premises, consented to Special Agent Townley's passive, in-person surveillance of the office waiting room, and (3) the evidence gained from Special Agent Townley's surveillance of the premises was such a small part of the foundation for probable cause that even if that evidence were excluded from the affidavit in support of the search warrant that issued in

this case, probable cause would still have existed.

A jury trial on the charges against Lievertz is scheduled for November 18, 2002.

### Legal Analysis

#### Necessity of a Franks hearing

 Lievertz argues that Special Agent Townley, in his Affidavit in Support of an Application for Arrest Warrants and Search Warrants, omitted relevant, material information that had it not been omitted would have affected the magistrate judge's determination of probable cause. An affidavit supporting a search warrant, as well as the warrant itself, is presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The standard that the Seventh Circuit uses to test an affidavit's allegedly omitted statements is the same standard that the Supreme Court articulated in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to evaluate allegedly false statements. *U.S. v. McNeese*, 901 F.2d 585, 594 (7th Cir.1990), *citing U.S. v. Williams*, 737 F.2d 594, 604 (7th Cir.1984). A court must hold a hearing on the validity of a search warrant if the defendant makes a substantial preliminary showing that: (1) an affidavit supporting a warrant omits a factual statement; (2) the affiant omitted the statement either knowingly and intentionally, or with reckless disregard for the truth; and (3) including the omitted statement, the affidavit is insufficient to establish probable cause. *See Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674.

 To make a "substantial preliminary showing," the defendant must prove each *Franks* element by a preponderance of the evidence. *U.S. v. A Residence Lo-cated at 218 Third Street*, 805 F.2d 256, 258 (7th Cir.1986). To show the first *Franks* element, a defendant must point out specifically what the affiant omitted and must supply affidavits or otherwise reliable statements of witnesses to prove the omission. *Franks*, 438 U.S. at 171–72, 98 S.Ct. 2674. In order to establish the second *Franks* element, a defendant must show that the omission of a fact amounts to a deliberate falsehood or reckless disregard for the truth. *U.S. v. Kimberlin*, 805 F.2d 210, 252 (7th Cir.1986).[1] Mere negligence by the affiant does not suffice, *218 Third Street*, 805 F.2d at 258; a defendant must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts. *McNeese*, 901 F.2d at 594. Finally, with regard to the third *Franks* element, an omitted fact is material if the affidavit, with the inclusion of that fact, would not support a finding of probable cause. *U.S. v. Pace*, 898 F.2d 1218, 1232 (7th Cir.1990). We note that only in rare instances is a *Franks* hearing merited when facts have been omitted in a warrant application. "[A]llowing omissions to be challenged would create a situation where almost every affidavit of an officer would be questioned." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir.1998).

In this case, Lievertz asserts that Special Agent Townley omitted the following thirteen points of information from his 75-page affidavit in support of the search warrant:

1. Dr. Lievertz is, in fact, one of only 50 pain medicine specialists practicing in the United States, out of a

---

**1.** "Reckless disregard for the truth" may be proved either directly, by showing that the affiant "in fact entertained serious doubts as to the truth of his allegations," or indirectly, by showing circumstances indicating that the affiant had "obvious reasons to doubt the veracity of the allegations." *Williams*, 737 F.2d at 602, *quoting St. Amant v. Thompson*, 390 U.S. 727, 731, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

group of approximately 1200 pain management specialists.

2. The office sought to be searched was a tertiary referral clinic for chronic, unmanageable pain patients who had no option for pain control other than long term medical management.

3. No patients were accepted (except on an emergency basis) unless referred by a physician and a review of relevant medical records and pain disorders had been conducted. Only approximately 10% of all patients referred were accepted for initial consultation to determine whether treatment by Dr. Lievertz would be appropriate.

4. Referring doctors referred to the office as the "office of last resort" when all other pain treatment options had failed.

5. All patients are screened prior to being accepted as patients in order to insure that "normal" medical treatments have failed to restore quality of life and/or alleviate pain.

6. All patients must sign in upon entering the waiting room. They are allowed to be accompanied by a caregiver, but people are not free to enter the office at will.

7. All patients must sign a medication management agreement. (Copies of Melinda Dawn Hawkins [sic] two signed agreements are attached as Exhibit A1 and A2).

8. The affidavit omits any reference to the actual physical condition of Melinda Dawn Hawkins. (See Exhibits D, Motion to Dismiss).

9. Opioids, in what appear to be large doses, are a recognized appropriate treatment for chronic pain. There is no upper limit of appropriate prescription; the amount must be determined by the interaction between the doctor and the patient.

10. The current edition of the Physician's Desk Reference recommends no specific dosage for prescriptions of OxyContin and specifically recognizes "its proper usage in individuals with drug or alcohol dependence, either active or in remission, is for the management of pain requiring opioid analgesia." (See Exhibit SB, attached and incorporated by reference.)

11. The 75 page affidavit fails to make any connection between the numerous, illegal sales of lawfully prescribed drugs by Melinda Dawn Hawkins to anyone else and to [sic] Dr. Lievertz and his office location. None of the sales were alleged to have occurred in his presence, with his knowledge, or in his office.

12. The affidavit provides no information[ ] (unless one assumes that the quantity prescribed alone suggests diversion)[ ] that would cause a magistrate to believe that Dr. Lievertz had any knowledge of any drug diversions by Hawkins.

13. The affidavit fails to accurately reflect information learned form [sic] the surveillance conducted in the office, specifically, in both sessions recorded, Melinda Dawn Hawkins spent considerable time and energy telling the doctor that she maintained her medications in a locked safe and permitted no one (other than her husband) access. She made statements such as she would never abuse a prescription. Copies of the tapes can be provided to the Court upon request.

We find, however, that Lievertz has failed to demonstrate that the alleged omission of these thirteen points requires a *Franks* hearing or that there is a basis for relief because of these omissions.

Lievertz sets forth the thirteen points of allegedly omitted information in a conclusory fashion and offers no convincing argument or evidence to establish their materiality, their accuracy, or the agent's state of mind in leaving them out of his affidavit. *See Franks*, 438 U.S. at 171, 98 S.Ct. 2674. Paragraphs 1, 2, 3, 4, 5, 7, 8, 9, 10, and 12 merely attempt to excuse the high dosages of controlled substances prescribed by Lievertz. As such, they may be relevant to the ultimate issue to be decided by the jury—whether Leivertz's distribution of controlled substances exceeded the bounds of professional practice—but they are not relevant to a determination of probable cause. *See U.S. v. Navarro*, 90 F.3d 1245, 1253 (7th Cir.1996) ("Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"). With respect to paragraphs 6 and 13, quite apart from the government's factual dispute of these statements, they too are not essential to a finding of probable cause. Even if true and thus appropriate for inclusion in the affidavit, their absence is not critical. In fact, they are so inconsequential and so tangential to a finding of probable cause that it is doubtful anyone would have omitted them deliberately or with reckless disregard for the truth.

Concerning paragraph 11, information contained in the affidavit directly contradicts Leivertz's assertion that the affidavit fails to connect him with the illegal drug sales made by his patient, Melinda D. Hawkins ("Hawkins"). For example, Dr. Irick, a pain treatment specialist and office-sharing colleague of Lievertz, advised Special Agent Townley that Lievertz's prescriptions to Hawkins exceeded medical necessity. Aff. ¶ A10. In addition, in an interview with Lievertz's secretary/office manager, Special Agent Townley documented that Hawkins made cash payments prohibited by Indiana Medicaid rules and regulations to Lievertz at his office in re-

turn for his "being good to [her]." Aff. ¶ A12; *see also* Aff. ¶ F1c. Therefore, when evaluating the existence of probable cause, one could reasonably infer that Lievertz knew Hawkins was paying him for writing prescriptions in excess of medical necessity—a reasonable inference that clearly connects him to her illegal drug sales.

Because we find that the thirteen points listed above are not material to a finding of probable cause, their omission from the affidavit in support of the search warrant is not fatal to the validity of the warrant. Accordingly, we *DENY* Lievertz's request for a *Franks* hearing.

### Probable Cause

Leivertz next argues that the magistrate judge did not have probable cause for issuing a search warrant for Leivertz's office. A magistrate judge may issue a search warrant only upon a showing of probable cause. "Probable cause to search exists if, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *U.S. v. Young*, 38 F.3d 338, 340 (7th Cir.1994). A magistrate judge's decision to issue a search warrant is entitled to great deference; it should be upheld so long as the judge had a "substantial basis for ... conclud[ing] that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (alteration in original). Put another way, a determination of probable cause should be overruled "only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the [judge] could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *U.S. v. Spry*, 190 F.3d 829, 835 (7th Cir.1999).

█ In this case, Magistrate Judge Foster found that probable cause existed to seize all of the items listed in Attachment B to the warrant, a thirteen-paragraph list particularly describing the items to be seized.[2] Lievertz challenges Judge Foster's finding of probable cause on the following grounds: (1) that the warrant criminalizes legal conduct; (2) that the warrant was too general; and (3) that the execution of the warrant was overbroad. Lievertz's first argument substantially overlaps his argument in support of a *Franks* hearing, and, again, we find it lacking. It is more appropriately a matter to be developed at trial by way of a possible defense rather than in a motion attacking probable cause. Notwithstanding Leivertz's contention that a specialist in pain management regularly prescribes abnormally large doses of controlled substances, Magistrate Judge Foster nonetheless had a "substantial basis" in the evidence upon which to find probable cause to believe that Lievertz was dispensing OxyContin, a Schedule II opiate, without regard for medical necessity and in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1347(1)(2).

The affidavit on which Magistrate Judge Foster based his finding of probable cause includes the following specific information: over a three year period, the average dosage of OxyContin prescribed by Lievertz to Hawkins was approximately 2.5 times higher than the largest dosage given in a clinical trial referenced in the Physicians Desk Reference. Aff. ¶¶ A9–A10. In a statement to another patient of Lievertz and overheard by Special Agent Townley, Hawkins admitted that her usual pharmacy refused to fill her prescription, which was written for an overdose amount of medication. Aff. ¶ E3b. Dr. Irick advised Special Agent Townley that such prescriptions exceeded medical necessity. Aff. ¶ A10.

As well, Dr. Irick provided the names of other Lievertz patients in addition to Hawkins that he believed abuse controlled substances. Dr. Irick indicated that Lievertz prescribed to one of these individuals more controlled substances than any person could take. Aff. ¶ D1c. From an interview with Lievertz's secretary/office manager, Special Agent Townley documented that Hawkins made large cash payments ($1500 and above) to Lievertz at his office, in violation of Indiana Medicaid rules and regulations. Aff. ¶¶ A12–A14. Special Agent Townley also obtained credible information from a confidential informant that Hawkins is a known OxyContin dealer.[3] Aff. ¶¶ C2–C8. In his affidavit, Special Agent Townley also swore to his experience and training as an investigator of drug-related activities. Aff. ¶ I1–I3; ¶ G1a-g. Therefore, we hold that the sup-

---

**2.** A complete copy of the warrant, including Attachment B, is in the Court file and thus is not specifically included in this Entry.

**3.** Although unanticipated by Magistrate Judge Foster at the time he was determining the existence of probable cause, Hawkins has since entered a plea of guilty as charged on six counts of knowingly distributing OxyContin, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1); one count of knowingly possessing with the intent to distribute OxyContin, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1); and one count of knowingly and willfully executing and attempting to execute a scheme and artifice to (1) defraud a health care benefit program, and (2) obtain money under the custody and control of a health care benefit program by false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1347. We cite this development in the interest of making a complete record as of the date of this Entry and certainly not to suggest or indicate that this action by Hawkins spills into our analysis of the issues raised in conjunction with Lievertz's Motion to Suppress, which we of course treat as an entirely separate matter.

porting affidavit alleged specific facts from which the magistrate judge could conclude that the items listed in Attachment B were associated with the crimes of drug dealing and Medicaid fraud and could be found in Lievertz's office. *See U.S. v. Hayes,* 794 F.2d 1348, 1355 (9th Cir.1986).

Lievertz next argues that the warrant was too general because it did not specifically direct the officers to seize particular items. The Fourth Amendment requirement of particularity exists to prevent general searches and the seizure of one thing under a warrant describing something else. *U.S. v. Jones,* 54 F.3d 1285, 1290 (7th Cir.1995). "In practice, courts have therefore demanded that the executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description be as particular as circumstances permit." *U.S. v. Brown,* 832 F.2d 991, 996 (7th Cir.1987).

Lievertz does not identify a specific term in the warrant that is so general as to be confusing to the agents executing the search. The concerns expressed by the Supreme Court in *Berger v. New York,* 388 U.S. 41, 58–59, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and *Andresen v. Maryland,* 427 U.S. 463, 480–81, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), are thus not implicated here. The warrant at issue specifically incorporated Attachment B, a list of categories of evidence and contraband related to drug dealing and Medicaid fraud, the offenses charged in this case. The warrant did not authorize officers to seize evidence unrelated to controlled substances or the trafficking of controlled substances. *See also Hayes,* 794 F.2d at 1356. In addition, unlike the situation in *U.S. v. Abrams,* 615 F.2d 541, 545–47 (1st Cir. 1980), which Leivertz cites in support of his Motion to Suppress, here the officers executing the warrant were not asked to exercise discretion to determine which pre-

scriptions provided dosages in excess of medical necessity; rather, they were directed to seize all medical records. *See also U.S. v. Scherer,* 523 F.2d 371, 375 (7th Cir.1975) (approving the seizure of all business records relating to the purchase and sale of firearms).

Lievertz also contends that the warrant was overbroad in that it authorized the seizure of items without probable cause. More particularly, he challenges the seizure of all medical records, billing records, Medicaid records, and patient files. The supporting affidavit specifically states, however, that in addition to Lievertz's treatment record for Hawkins, a review of the medical records of another of Lievertz's patients indicated that Lievertz was prescribing them "more controlled substances than any person would be able to take." Aff. ¶ D1c. It would be impossible for the government to determine how many of Lievertz's patients were involved in this alleged scheme to overprescribe and distribute controlled substances if the government were unable to search all of Lievertz's medical records, billing records, Medicaid records, and patient files.

In addition, Special Agent Townley attested in his affidavit, based on his experience, that individuals involved in the distribution of controlled substances maintain records of their illicit transactions as well as records generated by legitimate businesses with which they transact in order to aid their drug operations. Aff. ¶ G1a-b. Therefore, because records reflecting prescriptions exceeding the bounds of professional practice would likely be interspersed and co-mingled with records reflecting legitimate prescriptions, making it impossible to determine from the face of the file which was which, the officers needed to be authorized to seize all the medical records, billing records, Medicaid records, and patient files so that a

final determination of relevance could be made at trial. "The search and seizure of large quantities of material is justified if the material is withing the scope of the probable cause underlying the warrant." *Hayes,* 794 F.2d at 1355; *see also U.S. v. Bentley,* 825 F.2d 1104, 1110 (7th Cir. 1987). Such a seizure cannot be properly characterized as a "witch hunt." Def.'s Reply at 7.

 Leivertz contends that the seizure of all medical records, billing records, Medicaid records, and patient files violated his patient's privacy interests. However, the disclosure of information in the files of Leivertz's patients is not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *Whalen v. Roe,* 429 U.S. 589, 602, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). We do not reach the issue of Lievertz's standing to assert the privacy interests of his patients. It suffices that the government had a compelling interest in identifying illegal activity and in deterring future criminal misconduct, an interest which outweighs the privacy rights of those whose records were turned over to the government. *In re Subpoena Duces Tecum,* 228 F.3d 341, 351 (4th Cir.2000).

 Lievertz also challenges the inclusion of "personal computers, laptop computers, computer systems, audio tapes, video tapes, computer disks, and any other electronic devices containing data or information" in the search warrant, even though the officers conducting the search did not seize any of these items. Leivertz bases his challenge on the fact that the phrase "data or information" is not limited in any way. Because none of these items was seized, the objection raised by Leivertz is likely moot. In any event, taking into consideration the totality of the circumstances, we interpret the phrase "data or information" in the context of Attach-

ment B as being limited to data or information related to the distribution of controlled substances. Having found that probable cause existed to justify the seizure of Leivertz's medical records, billing records, Medicaid records, and patient files, we know of no principled distinction between those records kept electronically and those in paper form. We note, too, that "[t]he fact that the officers did not seize [any computers or electronic equipment] permitted by the warrant does not mean that they possessed the type of unfettered discretion [proscribed by] the Fourth Amendment." *Hayes,* 794 F.2d at 1356.

 With regard to Lievertz's challenge to the warrant's inclusion of "cash, currency, and records relating to assets or the income and expenses indicative of the distribution of controlled substances . . . and gold, silver, and coins and precious gems such as diamonds," those items are properly viewed as potential proceeds of criminal activity (the distribution of controlled substances and Medicaid fraud). Not only has the Seventh Circuit upheld such language in the past, *U.S. v. Somers,* 950 F.2d 1279, 1285 (7th Cir.1991), but such evidence is also relevant in that the affidavit in support of the warrant indicated that Hawkins made cash payments to Lievertz at his office in return for his "being good to [her]." Aff. ¶ A12; *see also* Aff. ¶ F1c.

 Finally, Lievertz challenges the warrant's inclusion of and the government's seizure of his handgun. Special Agent Townley explained the inclusion of that item, which Dr. Irick had alerted him to: "Individuals involved in the distribution of narcotics are known to possess firearms . . . Firearms are a necessity for a drug trafficker, as they are utilized to safeguard controlled substances, United States Currency, and the physical well-

being of the trafficker." Aff. ¶ G1f. The judicial officer passing on probable cause is " 'entitled to take into account' the experiences of trained officers whose affidavits explain the significance of specific types of information." *U.S. v. Lamon,* 930 F.2d 1183, 1189 (7th Cir.1991). We therefore find that seizure of the handgun was properly within the scope of probable cause.

### Warrantless Search of Leivertz' Waiting Room

■ Consistent with the holding explicated orally on the record at the November 14, 2002 hearing on the Motion to Suppress, we summarize our factual findings as follows: (1) the waiting room shared by Leivertz and Dr. Irick was a common area available and accessible to the public in which Leivertz has no legitimate expectation of privacy; (2) both Dr. Irick, who was Leivertz's co-tenant and landlord and who possessed actual authority over the premises, and Connie Woodyard, who was the doctors' office manager and who possessed apparent authority over the premises, consented to Special Agent Townley's passive, in-person surveillance of the office waiting room; and (3) the evidence gained from Special Agent Townley's surveillance of the premises was such a small part of the foundation for probable cause that even if that evidence were excluded from the affidavit in support of the search warrant that issued in this case, probable cause would still have existed. Therefore, we find that Special Agent Townley's surveillance of Leivertz's waiting room was a valid, warrantless search and that the fruits of that surveillance need not be suppressed.

### Suppression Is Inappropriate Remedy Because of Officers' Objectively Reasonable Reliance on Court's Probable Cause Determination

■ Even if we were to conclude that the warrant did not demonstrate probable cause that all of the items listed in Attachment B were connected with the criminal activity alleged, suppression of the evidence is not an appropriate remedy if the officers conducting the search acted in "objectively reasonable reliance" on the warrant's validity. *U.S. v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Ordinarily, the existence of a warrant is sufficient to establish that the officers acted in good faith in conducting the search. *Id.* Suppression in such a case is appropriate only if "the magistrate abandoned his detached and neutral role" in assessing the affidavit or if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. 3405. Leivertz has not argued that Magistrate Judge Foster abandoned his role, nor has he argued that the government was dishonest or reckless or that the officers acted without "objective reasonable reliance." Indeed, the affidavit fairly can be read to demonstrate probable cause that all of the items listed in Attachment B were connected with the criminal activity alleged. Accordingly, we hold that the officers' reliance on the issuing court's probable cause determination was objectively reasonable, and therefore, that suppression is neither an appropriate remedy nor required.

### Conclusion

In Defendant Leivertz's Motion to Suppress, he alleges that the government obtained information critical to the determination of probable cause through an illegal warrantless search and that the warrant used to conduct a subsequent search was too general and overbroad. For the reasons set forth above, we find that: (1) Defendant is not entitled to a *Franks* hearing; (2) all of the items listed in Attachment B to the warrant are supported

by probable cause; (3) the warrant is not so general as to violate the particularity requirement of the Fourth Amendment; (4) the warrant is not overbroad; (5) Special Agent Townley's surveillance of Leivertz's waiting room was a valid, warrantless search; and (6) in any event, the officers conducting the search acted with "objective reasonable reliance" on the warrant issued by a properly functioning judicial officer who determined that there was probable cause. Accordingly, we *DENY* Defendant's Motion to Suppress.