In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 04-2065

TRACY RUSSELL and JENNIFER DAVIS,

*Plaintiffs-Appellants,*

*v.*

BRYAN HARMS, individually and in his official capacity
as an officer of the Illinois State Police; J. DUSTIN KING,
individually and in his official capacity as an officer of
the Illinois State Police; and DOUG MAIER, individually
and in his official capacity as an officer of the White
County Sheriff's Department,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02 C 4160—**J. Phil Gilbert**, *Judge.*

---

ARGUED NOVEMBER 3, 2004—DECIDED FEBRUARY 2, 2005

---

Before FLAUM, *Chief Judge*, and EASTERBROOK and SYKES,
*Circuit Judges.*

FLAUM, *Chief Judge.* Tracy Russell and Jennifer Davis
filed this suit under 42 U.S.C. § 1983, alleging that Illinois State Police Officers Bryan Harms and J. Dustin King,
and White County Sheriff's Department Officer Doug Maier
violated their rights under the Fourth Amendment to the

United States Constitution. The district court granted summary judgment in favor of defendants, and Russell and Davis appealed. Because we conclude that plaintiffs have failed to establish a Fourth Amendment violation as a matter of law, we affirm.

## I. Background

In the summer of 2000, Officer Harms was contacted by Martin Bayley, the vice president of a company that owns several Circus Video movie rental stores. Bayley informed Harms that he suspected that one of his employees was stealing merchandise from a Circus Video store in Norris City, Illinois. Bayley advised that he believed that the culprit was Tracy Russell, a manager who had unregulated access to the store's VHS and video game inventory. According to Bayley, he had discovered that Russell and her roommate, Jennifer Davis, were selling hundreds of videocassettes and Nintendo N64 video games via the online auction site eBay under the username "TJ198."

Harms and other members of the Illinois State Police investigated Bayley's claims by logging on to eBay, posing as ordinary buyers, and bidding on a pack of 100 videotapes offered for sale by TJ198. After winning the auction, the officers were directed by TJ198 to send payment to Jennifer Davis at a post office box in Norris City, Illinois. The cashier's check mailed to that address was returned endorsed "Jennifer Davis." The tapes shipped by TJ198 arrived in two boxes. Someone had written "For Circus" in ink on the side of one of the boxes. Harms and Circus Video director of operations Bob Polcalri examined the tapes, finding that many were labeled with tags, bar codes, or other stickers identical to those used by Circus Video. It appeared that stickers of like shape and placement had been peeled off several other tapes.

On August 10, 2000, Harms applied for a warrant to

search the house where both Russell and Davis live. The complaint supporting the application for the warrant detailed the investigation as described above, and stated that, according to Bayley, Russell had no legal right to possess the tapes or video games, and had not purchased any movies from Circus Video's corporate parent or its suppliers. The complaint asserted that Russell and Davis would need unlimited, confidential access to a computer to manage the suspected high volume of transactions and to stay in constant communication with online bidders. The complaint alleged that this type of access would be available only at the suspects' house.

At 2:23 P.M. that day, a White County Circuit Court judge issued a warrant authorizing the police to search plaintiffs' home and seize the following:

> Video tapes
> Nintendo games
> Written records of sales
> Computer
> Computer documents
> Bank records
> Email records relating to E-bay auctions
> Financial records relating to E-bay auctions

(App. A23.)

Harms, King, Maier, and other officers executed the warrant that afternoon. Russell and Davis were home at the time of the search. The officers discovered boxes containing hundreds of videocassettes and Nintendo games. They also found CDs, DVDs, and non-Nintendo games and equipment. Some were commingled in the boxes with the VHS tapes and N64 games; others were located nearby. The officers seized all of these media items plus a wide range of documents found in the house.

Harms and King arrested Russell and took her to the police station for questioning. They returned her to her

house a few hours later. The officers subsequently arrested, questioned, and then released Davis.[1] Defendants contend that, while being questioned, Davis signed a written consent form authorizing the police to search a storage unit that she had rented in the nearby town of Carmi, Illinois. The next day, the officers searched the unit and seized all of its contents, including 135 boxes containing VHS tapes, Nintendo games, non-Nintendo games, CDs, and a popcorn machine.

On October 11, 2000, the White County State's Attorney filed informations charging Russell and Davis with felony theft. On February 25, 2002, however, the prosecutor dropped the charges after both suspects passed polygraph tests supporting their assertion that they had obtained the tapes lawfully, and had no part in the theft of any merchandise from Circus Video.[2] Plaintiffs' property was returned to them in March of 2002.

On August 9, 2002, Russell and Davis filed this action in the Southern District of Illinois under § 1983, alleging that the officers had violated their Fourth Amendment rights. Plaintiffs' complaint also raised supplemental state law claims of conversion, unreasonable intrusion upon seclusion, and violations of the Illinois Constitution. After discovery closed, the district court granted summary judgment in favor of defendants on the Fourth Amendment claim. The court held that the officers had not violated the federal constitution as a matter of law, and in the alternative were protected by qualified immunity. It declined to exercise supplemental jurisdiction and dismissed the state-law claims without prejudice. Russell and Davis

---

[1] King took no part in arresting or questioning Russell or Davis.

[2] Russell and Davis allege that they obtained the tapes legitimately at Circus Video store closing sales and from low-cost retailers. Defendants do not dispute this.

appeal only the district court's grant of summary judgment in favor of defendants on the Fourth Amendment claim, and do not challenge its dismissal of the state-law claims.

## II. Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In evaluating the district court's decision, we 'must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party.'" *Morfin v. City of East Chicago*, 349 F.3d 989, 996-97 (7th Cir. 2003) (quoting *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000)). We review the district court's grant of summary judgment de novo. *Id.* at 996. In assessing plaintiffs' § 1983 claim, we must determine at the threshold whether the facts viewed in their favor establish a violation of the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Only if we answer that question in the affirmative do we address whether the officers are protected by qualified immunity. *Id.*

Russell and Davis contend that the officers violated their rights by: (i) searching plaintiffs' house pursuant to a warrant unsupported by probable cause; (ii) executing a warrant that lacked particularity; (iii) exceeding the scope of the search warrant; (iv) seizing plaintiffs unlawfully; and (v) searching Davis's storage locker without consent. We address these arguments in turn.

## A. Probable Cause

The Fourth Amendment demands, among other things, that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Russell and Davis contend that the warrant to search their house was not supported by probable cause, and that any reasonable officer would have recognized this. Plaintiffs argue that the complaint in support of the warrant cannot sustain a finding of probable cause because it does not allege that anything had been stolen. They reason that because it is not unlawful per se to possess or sell videotapes or games, the failure to allege that a crime occurred is a missing link that fatally undermines the warrant.

As an initial matter, plaintiffs mischaracterize the record. The complaint seeks "evidence of the offense of Theft," and states that "Bayley advised that Russell has no legal right to any Circus Video VHS movies or N64 games," and had "not purchased any VHS or N64" games from Circus Video's parent corporation or its suppliers. Thus, the complaint clearly alleges that a crime has occurred. Plaintiffs' strained reading ignores the requirement that "affidavits for search warrants . . . be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

Viewing the complaint as a whole, it clearly establishes probable cause to search plaintiffs' house. A complaint supports a finding of probable cause when it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). "[P]robable cause requires only a probability or chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).

The complaint in support of the warrant relied on infor-

mation from Bayley, a known, credible witness whose allegations had been corroborated by the police. Bayley advised that Russell's position as store manager gave her the opportunity to steal inventory from Circus Video without being detected, and that she and her roommate were selling hundreds of videotapes and Nintendo games online. The police independently confirmed that Russell's roommate, Davis, was selling large quantities of videotapes online, and that some of these tapes appeared to have been obtained from Circus Video. The police had been advised by a reliable witness that Russell had not purchased or legally obtained Circus Video merchandise. They also knew that Davis needed access to a computer to participate in the online auctions. Given the high volume and frequency of these sales, the officers were reasonable to believe that they would find this computer in the suspects' house. In short, the complaint lays out evidence that would lead a prudent person to believe that a search of plaintiffs' home would uncover evidence of theft. The fact that the officers may have turned out to be wrong does not undermine this conclusion. *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) (probable cause determination is based upon only those facts known to the police when they apply for the warrant).

## B. Particularity

The Fourth Amendment also requires that warrants "particularly describ[e] the . . . things to be seized." U.S. Const. amend. IV. Russell and Davis argued to the district court that the warrant fell far short of this particularity requirement because it did not catalogue the individual movie and game titles allegedly stolen from Circus Video. On appeal, plaintiffs contend that the warrant is insufficiently particular because it would not enable an officer reading it to differentiate between those items subject to the warrant and property lawfully possessed by Russell and

Davis. They also assert that it placed no meaningful limits on the category of documents that might be seized.

None of these arguments are meritorious. "Although the [F]ourth [A]mendment requires that a search warrant describe the objects of the search with reasonable specificity, it need not be elaborately detailed." *United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995) (quoting *United States v. Somers*, 950 F.2d 1279, 1285 (7th Cir. 1991)). "The level of specificity must be such . . . that the officers executing the warrant are able to identify the things to be seized with reasonable certainty." *Id.* (quoting *United States v. Sleet*, 54 F.3d 303, 307 n.1 (7th Cir. 1995)). "If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998). The police had reason to believe that Russell and Davis had stolen hundreds of videos and games. Under the circumstances, it would have been impractical to list each title individually. The warrant accommodated this reality by specifying that "Video tapes" and "Nintendo games" be seized. And because the universe of movies and games is so large, it was impractical to list the titles *not* suspected of being stolen. The warrant gave the officers as much guidance as was feasible. *See United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998) (warrant directing seizure of "tainted animal feed" and "any and all misbranded drugs to include clenbuterol and any of its derivatives" held sufficiently particular "[b]ecause the warrant could not have better informed the agents how to distinguish between legal and illegal substances").

Nor was the language so broad as to amount to a general warrant to seize any document found on the premises, as plaintiffs contend. The warrant authorized the seizure of "Written records of sales[,] . . . Computer documents[,] Bank records[,] Email records relating to E-bay auctions," and "Financial records relating to E-bay auctions." Despite the

difficulties inherent in specifying the types of documents to be seized, *see Vitek*, 144 F.3d at 481, each category named in the warrant had a direct relationship to the suspected crime. The warrant therefore satisfied the Fourth Amendment's requirement of particularity.

## C.  The Scope of the Seizure

Russell and Davis also contend that the officers violated their rights by exceeding the scope of the warrant. In addition to those items specifically enumerated in the warrant, the officers seized DVDs, CDs, blank videotapes, and non-Nintendo brand video games. We conclude that this seizure, although broad, was constitutionally permissible.

An officer executing a search warrant may seize: (i) items named in the warrant; and (ii) evidence that, although not described in the warrant, is subject to seizure under the plain view doctrine. *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992). The plain view doctrine applies "if the officer has a legal right to be in the place from where he sees the object subject to seizure[, ] a 'lawful right of access to the object itself,' and if the object's incriminating nature is 'immediately apparent.'" *United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1388 (7th Cir. 1991)). The incriminating nature of an object is "immediately apparent" if, under the circumstances, the officer has "probable cause to believe that the item is linked to criminal activity." *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997).

The media items not specified in the warrant were validly seized pursuant to this doctrine. The warrant gave the officers a legal right to enter plaintiffs' house. *See Horton v. California*, 496 U.S. 128, 135-36 (1990). Defendants discovered the property in question while searching those areas where they were likely to find the items expressly named in the warrant. Thus, the officers had a lawful right of access

to the property. And under the circumstances, defendants had probable cause to believe that the items they seized were evidence of a crime. At the time the officers applied for the warrant, they had reasonable grounds to suspect that Russell and Davis were stealing hundreds of VHS movies and Nintendo N64 video games from Circus Video and selling these items online. The officers were justified in believing that incriminating evidence would be discovered in plaintiffs' house. Their suspicions were further supported when, upon executing the warrant, they discovered hundreds of videocassettes and Nintendo games.[3] Some of the CDs, DVDs, and non-Nintendo brand games were found in the same boxes as the items specifically named in the warrant. Others were found nearby. In light of the volume of the suspected thefts, the location where these items were found, and their similarity to the categories of items named in the warrant, the officers reasonably believed that they were evidence of theft.

Russell and Davis also contend that the officers blatantly exceeded the scope of the warrant by seizing "every scrap of paper" found in their house. Plaintiffs did not adequately raise this argument below. They argued to the district court that the warrant was insufficiently particular, and that a vague warrant potentially would allow for the seizure of any type of document. They did not assert, however, that the officers had seized all documents in the house. Other portions of plaintiffs' summary judgment filings resolve any doubt about what they argued below. Their memoranda opposing summary judgment asserted that the officers had exceeded the scope of the warrant by seizing "all DVDs, all CDs, and all non-Nintendo equipment and games

---

[3] Although this evidence is irrelevant to whether the warrant was supported by probable cause, it bears directly upon whether the officers were justified in seizing additional items found during the course of the search.

(Playstation, Sega, Gameboy, etc.)," (R. 59 at 8; *see also id.* at 17; R. 38 at 8, 17), but did not complain of the seizure of records. Under the circumstances, plaintiffs did not sufficiently alert the district court of the factual basis of their claim. "[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Sanders v. Village of Dixmoor*, 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983)). Accordingly, this argument is forfeited.

### D.  Arrest of Plaintiffs

Plaintiffs assert that their arrests violated the Constitution. Their first argument in support of this claim is that the officers entered their home pursuant to an invalid search warrant. But as we have already explained, the warrant was valid. Second, plaintiffs contend that an officer may arrest a suspect in her home only while executing a valid arrest warrant. Because the police held a search warrant rather than an arrest warrant, plaintiffs claim their arrest was unlawful.

In *Payton v. New York*, 445 U.S. 573 (1980), the Supreme Court held that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576. It went on to note that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603. *Payton* did not hold, however, that an arrest warrant is the exclusive basis upon which police may arrest a suspect in her home. The Court noted that an arrest warrant would suffice in response to an argument

raised by the government that requiring a search warrant under those circumstances would impose an unreasonable burden upon law enforcement. *Id.* at 602. If anything, *Payton* suggests that officers in possession of a search warrant have gone above and beyond what the Fourth Amendment requires before they may arrest a resident in her home. Several of our fellow Circuits have read *Payton* this way, finding a search warrant sufficient in these circumstances. *See United States v. Winchenbach*, 197 F.3d 548, 553 (1st Cir. 1999) (police may arrest an individual in her home without an arrest warrant "as long as they are lawfully on the premises (by reason, say, of a search warrant) and probable cause exists"); *Mahlberg v. Mentzer*, 968 F.2d 772, 775 (8th Cir. 1992); *Jones v. City of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988). *See also Faulkner v. State*, 847 A.2d 1216, 1231 n.4 (Md. Ct. Spec. App. 2004) (collecting cases); 3 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 6.1(c) (3d ed. 1996). We agree with the reasoning of these authorities and hold that police executing a valid search warrant may arrest a resident found within the permissible scope of that search if the officers have probable cause to believe that the resident has committed a crime. *Cf. United States v. Price*, 888 F.2d 1206, 1209 (7th Cir. 1989) (implicitly recognizing this principle). Moreover, the evidence known to the police when they applied for the warrant also gave them probable cause to believe that both Russell and Davis were committing theft. Defendants therefore were justified in arresting plaintiffs when they found them at home at the time of the search.

## E.  Consent to Search the Storage Unit

   At summary judgment, the parties disputed whether Davis had authorized the police to search her storage unit. In support of their position, defendants produced a consent

form purporting to have been signed by Davis on August 10, 2000, authorizing Harms and King to search the unit. Prior to the close of discovery, Davis submitted an affidavit alleging that "Defendant Harms did not ask me for consent to search the storage unit I rented at Ustore-ULock." The signature on the affidavit produced by Davis appears similar to the signature on the consent form. After discovery had closed, Davis produced a supplemental affidavit alleging that she had not signed the consent form and had never authorized the police, either orally or in writing, to search her storage unit. The district court refused to consider the late-filed affidavit and held that the remaining evidence established that Davis had consented to the search as a matter of law.

Plaintiffs challenge the district court's refusal to consider the late affidavit, asserting that it reveals a genuine issue of fact as to whether Davis consented to the search. They contend that, even absent the late affidavit, there is a jury question regarding Davis's consent. They argue, moreover, that any consent given by Davis was tainted by her illegal arrest.

We review the district court's refusal to consider an affidavit in opposition to a motion for summary judgment for abuse of discretion. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000). "Under this standard, '[d]ecisions that are reasonable, i.e., not arbitrary, will not be questioned.'" *Id.* (quoting *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998)). By the time discovery had closed, plaintiffs had already filed two memoranda in opposition to defendants' motions for summary judgment. Davis's late-filed affidavit does not contain newly discovered evidence; it purports to be based on facts known to plaintiff from the outset of this litigation, and its assertions easily could have been included in her timely affidavit. Because it was filed after the close of discovery, moreover, defendants had no opportunity to depose Davis on its contents. The

district court's refusal to consider this evidence was not unreasonable. To the contrary, "a party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission . . . and then determining whether [the remaining facts] entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

We agree with the district court that the remaining evidence establishes as a matter of law that Davis consented to the search. The signed consent form is highly probative evidence that Davis authorized defendants to search her storage unit. Faced with this evidence, Davis presented a tentatively-worded affidavit that fails to refute the conclusion that she consented to the search. The affidavit, even if true, establishes only that Harms did not ask for Davis's consent. But the record makes clear that any one of a handful of officers could have requested that Davis sign the form. Davis's filing of the second affidavit—with its bolder assertions—borders on a tacit concession that the first affidavit was insufficient to create an issue of fact. The timely-filed evidence that is properly a part of this record leads to only one conclusion—that Davis signed the form, authorizing the officers to search the storage unit. Finally, because the officers lawfully arrested Davis, her argument that her consent was tainted by the arrest is without merit. The defendants committed no Fourth Amendment violation by searching her storage locker.[4]

---

[4] Plaintiffs' appellate brief vaguely mentions that a wide variety of items was seized from Davis's storage locker. Davis does not develop an argument that the officers exceeded the scope of any consent she may have given them. Accordingly, we will not consider this issue. *See Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n.6 (7th Cir. 2002).

(continued...)

### III. Conclusion

For the reasons stated herein, we find that defendants did not violate plaintiffs' rights under the Fourth Amendment. Accordingly, we AFFIRM the district court's grant of summary judgment.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[4] (...continued)